Ruth Morton, Appellant, v. Edwin Raphael et al., Appellees.

Gen. No. 44,161.

Opinion filed May 4, 1948. Released for publication June 4, 1948.

JOSEPH I. BULGER and PAUL W. BRUST, both of Chicago, for appellant.

CHARLES LEVITON and JEROME H. LEVITON, both of Chicago, for appellees.

Mr. Presiding Justice Friend delivered the opinion of the court.

In the spring of 1946, the plaintiff, Ruth Morton, was commissioned to paint murals on the walls of the Great Lakes Room of the Knickerbocker Hotel in Chicago. After she had completed her work, defendants, interior decorators, were engaged to redecorate the entire room. Thereafter, in the July 1946 issue of the nationally circulated magazine *Hotel Management,* there appeared defendants' advertisement showing several photographic views of the newly decorated room, including plaintiff's murals. After she saw the advertisement she filed suit on the theory that defendants pirated, infringed and published without permission mural paintings, the common-law copyright of which belonged to her, a professional painter-artist, as the result of which "her reputation, name and income as an artist and painter of murals have been seriously and permanently damaged . . . in the sum of Fifty thousand dollars." Defendants' motions to strike the original and the amended complaints were both allowed, and an order dismissing the suit was entered, from which plaintiff has taken an appeal.

 The principal question presented is whether the amended complaint stated a good cause of action. Plaintiff did not allege nor does she contend that she secured a copyright of the murals. Her cause of action is avowedly based upon an alleged exclusive common-law right in the murals first published by defendants through the advertisement in question. It is apparent, however, from the pleadings, that plaintiff, under hire by the Knickerbocker Hotel, made the first publication of the murals when she painted them on the walls of the Great Lakes Room where they could be seen and were undoubtedly observed by many persons. Under the settled rule in this and other jurisdictions such publication without copyright divests the owner of an exclusive common-law right and the pro-

duction becomes common property, subject to the free use of the community. In the early case of *Rees v. Peltzer*, 75 Ill. 475, atlases, containing maps of the City of Chicago, were sold to various real estate dealers, and one such atlas was placed in the hands of the city for public use, where any part, or the whole of it, could be copied and used by any citizen who so desired. The court held such act to be a voluntary publication, divesting the author of any common-law right in the atlas, saying: "It may, however, be now considered as established, that when these products are circulated abroad, and published with the author's consent, they become common property, and subject to the free use of the community; or, in other words, that there is no copyright in a *published* work at common law, and such copyright exists only by statute." In *Van Veen v. Franklin Knitting Mills, Inc.*, 145 Misc. 451, 260 N. Y. S. 163, the court posed the question: "When an owner of a common-law copyright publishes his work in a magazine without copyrighting it under the federal statute, can he by an agreement with the publisher which is unknown to the public prevent the public from reproducing the form of the work which is so published?" and stated: "The question is answered in the negative." Again, in *Kipling v. Fenno*, 106 Fed. 692, the court said: "Baldly stated, the proposition advanced is that an author, whose mental productions, prose, verse, and title, have been given to the world by publication without copyright, so that anyone is free to reprint and sell the whole or any part of them, may nevertheless regulate the manner in which such reprinted matter may be grouped and entitled, and may restrain any application of the title he selected otherwise than as he used or uses it. No authority is cited which supports any such proposition, . . . . It would seem that the measure of relief which authors may obtain against unauthorized publication of their works must be found in the copyright statutes, which,

when availed of, are an abundant protection against such publication.'' See also *Bamforth v. Douglass Post Card & Machine Co.*, 158 Fed. 355, and *Kurfiss v. Cowherd*, 233 Mo. App. 397, 121 S. W. 2d 282, wherein a house built in accordance with the plaintiff architect's plans was thereafter open to public inspection with his consent. Although the plans had not been copyrighted the architect sued the defendants for subsequently constructing residences from his plans without his consent and for their own profit. As applicable to these facts the court said: ''Another method [by which publication may be accomplished] is by placing · the original on exhibition in a public place . . . where the public may view the same without restriction. . . . But it is universally held that where the work is made available to the public, or any considerable portion thereof, without restriction, there has been a publication.''

█ Plaintiff takes the position that she had a common-law property right.in the murals to the exclusion of all except those to whom she might give her permission to publish, and that since defendants did not obtain permission or authority to publish a copy or reproduction of the murals, they were guilty of an infringement of her exclusive right therein, and therefore their conduct was actionable at law. The only two cases cited by plaintiff in support of her contention are *Frohman v. Ferris*, 238 Ill. 430, and *Bleistein v. Donaldson Lithographing Co.*, 188 U. S. 239. In the *Frohman* case the owner of the rights in the unpublished manuscript of a play gave a public presentation of it in various theaters. The court held that at common law the author of an intellectual production, including literature, drama, music, art, etc., had an absolute property right in his production of which he could not be deprived so long as it remained unpublished, nor could he be compelled to publish it, and he might permit the use of his production by one or more

persons to the exclusion of others, and give a copy of the manuscript to another person without parting with his property in it; but it was also held that the presentation of the play was not a publication resulting in the dedication of the play to the public, and that if the play had been printed and circulated there would have been a publication. The difference between the two situations is appropriately stated by the court as follows: "there is a logical distinction to be observed in dealing with the effect upon the authors' rights of the public performance of an unprinted drama and the publication of a printed book." In the *Frohman* case the owner of the play had not dedicated the work to the public, whereas in the case at bar the murals were undoubtedly dedicated to the public when they were painted on the walls of the hotel room with plaintiff's name indorsed on each of the murals, open to the inspection of anyone who visited the hotel. In *Bleistein v. Donaldson Lithographing Co.* the court held that a copyright under the United States statutes will be protected by law. Plaintiff in the case at bar concedes that she had not obtained a copyright, and because her cause of action rests entirely upon a common-law right in the murals, that right was lost upon publication.

Aside from the foregoing propositions we think there is an additional reason why plaintiff cannot recover under her amended complaint. She admits that the Knickerbocker Hotel hired her to paint the murals. In the absence of a copyright, exclusive common-law right in the murals, upon which plaintiff relies, became vested in the new owner thereof, the Knickerbocker Hotel. Under the generally accepted rule a painter or writer for hire who has failed to have his work copyrighted and has failed to reserve to himself such copyright, loses the exclusive common-law right therein, and ownership and all rights therein vest in the new proprietor, the person who has commissioned

the artist for the work. In other words, plaintiff's position is no different than if she had been hired to paint the murals by defendants. In that situation she would clearly have no claim against them. In 18 C. J. S. Copyright and Literary Property § 12 (p. 147) the writer states that "An author may sell and transfer his entire property in an intellectual production to another," and in § 10 (p. 144) of the same volume states the rule as follows: "As the author has no inherent common-law right to have his name used in connection with his work, his name may be wholly omitted from the work, if the proprietor of it sees fit so to do, . . . ." These principles were approved in *Phillips v. W. G. N., Inc.*, 307 Ill. App. 1. A script writer there sought to enjoin defendants from broadcasting a serial radio program. She had written the script and was paid for it. After defendants discharged her they continued to use the script, in which she claimed a common-law author's right of protection. In affirming the dismissal of her complaint the court said that "plaintiff was employed by defendants to do particular work; that she did the work, was paid for it and in such a situation under the law the ownership in the result of what was done belonged to defendants." In *Heine v. Appleton,* 4 Blatchford's Circuit Court Reports 125, it was held that even if the plaintiff were the proprietor of the copyright of the prints and engravings in question, he had been employed and paid by the defendants to prepare some of the prints for publication by them, and he could not now be allowed to ask that the sale of the prints he had so prepared should be stopped by injunction. In *Dielman v. White,* 102 Fed. 892, the court said: "In general, when an artist is commissioned to execute a work of art not in existence at the time the commission is given, the burden of proving that he retains a copyright in the work of art executed, sold, and delivered under the commission rests heavily upon the artist himself."

Aside from the legal questions involved, it is difficult to perceive how plaintiff could be injured by the advertisement in question. Defendants made no claim to have painted the murals. They were interior decorators and claimed only to have redecorated the room, which they did. The authorship of the murals is nowhere denied in the advertisement, and plaintiff offers no authority that defendants were under any legal duty to recite her name therein as a painter. If the murals were as artistic and effective as all the parties concede, it would seem that plaintiff was rather benefited from the publicity afforded, than damaged thereby, and it would be quite strained to hold that her name, reputation and income as an artist had been seriously and permanently damaged.

In view of these conclusions it becomes unnecessary to discuss other points urged by the respective parties. We are of opinion that the superior court properly sustained defendants' motion to strike the amended complaint and dismiss the cause of action, and the order is therefore affirmed.

*Order affirmed.*

SCANLAN and SULLIVAN, JJ., concur.