BAJPAYEE, APPELLANT, *v.* ROTHERMICH, APPELLEE.▉

[Cite as Bajpayee v. Rothermich (1977),
53 Ohio App. 2d 117.]

(No. 76AP-919—Decided June 7, 1977.)

*Messrs. Savage & Snevel,* for appellant.

*Messrs. Campbell, Schwarzwalder, Sanford & Baesman,* for appellee.

WHITESIDE, J. Plaintiff appeals from a judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendant. In support of his appeal, plaintiff raises two assignments of error, as follows:

1. "The trial court erred in sustaining defendant's motion for summary judgment on the grounds that upon review of the depositions, affidavits and other pleadings filed no genuine issue as to any material fact exists as a matter of law."

2. "The trial court erred in overruling plaintiff's motion for summary judgment on the grounds that upon review of the depositions, affidavits and other pleadings filed no genuine issue as to any material fact exists and is contrary to the manifest weight of the evidence as a matter of law:

118

"1. As to plaintiff's first claim based on prima facie tort (invasion of plaintiff's right of publicity);

"2. As to plaintiff's second claim based on conversion of intangible property rights;

"3. As to plaintiff's third claim of intentional interference with plaintiff's contract rights."

Plaintiff was employed as a biochemist in charge of the research laboratory of Columbus Medical Center Foundation, of which defendant was president and medical director as well as a member of the board of trustees. While so employed, plaintiff made discoveries in the treatment of arthritis through use of radioactive indomethacin suppositories. Plaintiff set forth such discoveries in an article, which was not published, entitled "Studies on the Distribution of Radioactive Indomethacin in the Human." Plaintiff contends that defendant later presented the discovery as his own before the American Society of Clinical Pharmacology and Therapeutics. Thus, plaintiff brings this action, contending that "the defendant took a scientific discovery of the plaintiff without the plaintiff's permission and presented the discovery to a national scientific society as the defendant's." Plaintiff contends that these acts were intentional and malicious and intended by defendant to harm plaintiff. Plaintiff also contends that defendant converted plaintiff's discovery to defendant's own use and that defendant intentionally interfered with plaintiff's contract rights with his employer, resulting in his being discharged.

Plaintiff concedes that he has no common law copyright interest in the publication and that the discovery because of shop rights is the property of the employer, rather than that of plaintiff. Defendant, on the other hand, admitted (by affidavit) committing the act which plaintiff contends is the basis of his claim for relief, stating:

"That affiant did not omit Dr. Bajpayee's name from the abstract 'The Fate of Rectally Administered Radioactive Indomethacin in Human: A Preliminary Report' to intentionally harm plaintiff or out of any ill will toward plaintiff;

"Affiant says that under the circumstances existing at that time, Affiant simply felt no duty to include plaintiff's name on the abstract 'The Fate of Rectally Administered Radioactive Indomethacin in Humans: A Preliminary Report' which Affiant wrote in condensed form because of the word limitation and personally presented before the American Society for Clinical Pharmacology and Therapeutics on May 1, 1971; * * *."

The matter having been before the trial court upon a summary judgment pursuant to Civ. R. 56(C), it was necessary to construe all the evidence most strongly in favor of plaintiff, and the granting of summary judgment for defendant could be justified only if from the evidence so construed reasonable minds could only come to the conclusion that plaintiff has no claim for relief. Clearly, there are conflicts and contradictions in the evidence, being interrogatories, affidavits, and depositions. There are factual conflicts. The basic question, therefore, is whether there is an issue as to any *material fact* and whether defendant is entitled to a judgment as a matter of law.

Plaintiff's basic claim is predicated upon plagiarism—a contention that defendant appropriated plaintiff's ideas and language and passed it off as his, defendant's own. The evidence clearly indicates a question of fact upon this issue. However, defendant contends that there can be no claim of plagiarism since plaintiff has no property interest in the publication because the property interest by virtue of the shop work doctrine is in plaintiff's then employer. Defendant has relied upon common law copyright law, which has no application here, the issue being whether there may be a claim for plagiarism separate and distinct from common law copyright or piracy. Defendant refers to the Illinois case of *Morton* v. *Raphael* (1948), 334 Ill. App. 399, 79 N. E. 2d 522, in support of his position that there can be no recovery by plaintiff herein. In that case, an artist who had been engaged to paint murals on walls of a hotel was found to have no claim for relief against a third person who utilized a photograph of the room in which the murals were located, including the mural, in connection

with a commercial advertisement. In the course of the opinion, the Illinois court stated at 405, 79 N. E. 2d at 524:

"Aside from the legal questions involved, it is difficult to perceive how plaintiff could be injured by the advertisement in question. Defendants made no claim to have painted the murals. They were interior decorators and claimed only to have redecorated the room, which they did. The authorship of the murals is nowhere denied in the advertisement, and plaintiff offers no authority that defendants were under any legal duty to recite her name therein as a painter. If the murals were as artistic and effective as all the parties concede, it would seem that plaintiff was rather benefited from the publicity afforded, than damaged thereby, and it would be quite strained to hold that her name, reputation and income as an artist had been seriously and permanently damaged."

Clearly, the *Morton* case is distinguishable from the present case. In the *Morton* case, no plagiarism was involved—the publishers of the photograph including the murals did not claim the murals as their own—the only possible claim being infringement of common law copyright which the plaintiff therein had relinquished to the hotel who commissioned her to paint the murals.

Here, on the other hand, when the evidence is construed most strongly in favor of plaintiff, defendant committed plagiarism, claiming plaintiff's work and ideas to be his own. The issue, therefore, is whether such plagiarism is actionable where no common law copyright exists or has been relinquished. Clearly, when the evidence is construed most strongly in favor of plaintiff, there is no way that it could be reasonably concluded that plaintiff relinquished the right to have recognition for his own work and ideas by placing such work in the public domain or otherwise if such right exists in one who has relinquished the property interest in his work and ideas to his employer as between him and the employer, the employer having an irrevocable license to us the work product of the employee

This appears to be a case of first impression, neither party having cited any authority directly in point upon the

issues involved. Plaintiff, although conceding it not to be directly in point, relies upon *Zacchini* v. *Scripps-Howard Broadcasting Co.* (1976), 47 Ohio St. 2d 224, the first paragraph of the syllabus of which reads:

"One who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy, and the use or benefit need not necessarily be commercial."

Plaintiff in effect contends that claiming another's work as one's own constitutes a similar invasion of privacy to using the name or likeness of another. At pages 229, 230 of *Zacchini*, Justice Stern commented:

"The interest which the law protects is that of each individual to the exclusive use of his own identity, and that interest is entitled to protection from misuse whether the misuse is for commercial purposes or otherwise. * * * But the fundamental wrong is the appropriation for one's self of the benefits of another's name, likeness or identity, and the wrong is the same whether or not that benefit is pecuniary. * * *"

Upon the prior appeal of this case to this court, Judge McCormac, in *Bajpayee* v. *Rothermich*, unreported, Court of Appeals for Franklin County, No. 74AP-56 decided April 17, 1975, stated:

"Analyzing the amended complaint, it is noted that plaintiff does not claim ownership of the discovery and he has conceded that his discoveries belong to his employer. However, it is further noted that he has not sued his employer, but a fellow employee, albeit the president and member of the board of trustees. The question then is whether conceivably or possibly plaintiff has retained some interest, property or otherwise, that would enable him to assert a claim against a fellow employee who maliciously uses plaintiff's discoveries as his own with the intent to harm plaintiff. * * *

"In addition, the allegation that a fellow employee maliciously claimed plaintiff's discovery was his own, causing damage to plaintiff, conceivably may provide the basis for proving facts that support a claim. While it has

been held that the fact that an act which is *clearly* within defendant's right is not necessarily actionable merely because it is done maliciously, the application of that rule is not clear under the limited statements contained in the pleadings. * * *''

The circumstances from the depositions, affidavits, and interrogatories are no clearer today than they are from the complaint. This court previously recognized the existence of a claim for relief predicated upon the allegations of the complaint. It makes no difference whether we label this claim for relief plagiarism, invasion of privacy, or *prima facie* tort, which plaintiff contends the claim to be. Regardless of the label, a case of first impression is presented to this court.

Plaintiff contends that defendant's acts constitute a *''prima facie* tort,'' which has never been recognized as a cause of action in Ohio A so-called *prima facie* tort is the intentional infliction of injury upon another without excuse or justification by an act which in and of itself may not be unlawful. Defendant contends that the existence of *prima facie* tort in Ohio tends to be negated by *Frazier* v. *Brown* (1861), 12 Ohio St. 294, and *Lancaster* v. *Hamburger* (1904), 70 Ohio St. 156. In *Frazier,* the court specifically refused to determine the issue, it being stated at page 303-304 of the decision:

" * * * And it certainly is *possible,* that it may have been dug by the defendant from motives of *unmixed* malice, without any object, and, when done, incapable of answering any end, either of ornament, convenience, or profit, connected with the enjoyment and use of his property. But this is not averred, 'and will not be presumed. And *such* a case, should it ever arise, is reserved for future consideration.''

*Lancaster* likewise did not determine the issue since it involved a truthful report by a patron of misconduct by a conductor, which report was prompted by ill will and a desire to have the conductor discharged. However, the case was predicated upon a showing that the conductor had been actually guilty of the misconduct charged against him. The court stated at page 164:

"* * *The record does not admit a doubt that the defendant exercised a legal right, if, indeed, he did not perform a duty in making complaint to the superintendent of the company of the plaintiff's misconduct. The evidence tended to show, and the instruction required the jury to find, that the plaintiff had been guilty of the misconduct of which complaint was made."

Additionally, the court stated earlier on the same page:

"* * *[I]t is immaterial by what motive one is prompted in the exercise of a clear legal right or the performance of a duty."

On the other hand, *Letts* v. *Kessler* (1896), 54 Ohio St. 73, not cited by defendant, does lend some support to his position, the Supreme Court holding that a fence constructed by one on his own property solely out of motives of unmixed malice toward his neighbor gives rise to no cause of action in the neighbor, a spite-fence case. The court held that no rights of the adjoining owner had been invaded by the fence, and, accordingly, no cause of action existed. The court stated that the correct maxim of law is that one should use his property as to not injure the rights of another, stating at page 85:

"* * * The maxim should be limited to causing injury to the *rights* of another, rather than to the *property* of another, because for an injury to the rights of another there is always a remedy, but there may be injuries to the property of another for which there is no remedy * * *."

This leads us right back to the basic issue in this case: is there a right in plaintiff to be recognized for his work product which was violated by defendant's claiming that work product as his own? We conclude that there is such a right. Although such right may not be invaded by a failure to give recognition to another upon an authorized publication, it is invaded when one claims the other's work product as his own.

When the evidence is construed most strongly in favor of plaintiff, there are genuine issues of material facts upon which reasonable minds could reach different con-

clusions. Accordingly, the trial court erred in sustaining defendant's motion for summary judgment, and the first assignment of error is well taken.

The second assignment of error is not well taken for essentially the same reasons given under the first assignment of error; namely, when the evidence is construed most strongly in favor of plaintiff, there are genuine issues of material facts upon which reasonable minds could reach different conclusions. Accordingly, the trial court did not err in overruling plaintiff's motion for summary judgment in his favor, and the second assignment of error is not well taken.

Defendant has filed in this court a motion to strike the testimony of one of the witnesses whose deposition plaintiff presented in the trial court. This is a highly improper motion to make in this court. Even assuming there was merit to the contention, such a motion should have been made in the trial court and cannot properly be raised on appeal in this manner. Defendant does contend that the deposition would not be admissible at trial. This was a matter that should have been raised in the trial court, and, if ruled upon adversely by the trial court, should be raised by a cross-appeal, not by a motion to strike filed in this court.

For the foregoing reasons, the first assignment of error is sustained, the second assignment of error is overruled, the judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded to that court for further proceedings in accordance with law consistent with this decision.

*Judgment reversed and cause remanded.*

HOLMES and REILLY, JJ., concur.