SULPHUR SPRINGS REALTY, INC., APPELLEE, *v.* BLACKSTONE ET AL., APPELLANTS.

(No. WD-82-2—Decided June 18, 1982.)

*Mr. Cary Cooper,* for appellee.
*Mr. Joseph Pilkington,* for appellants.

POTTER, J. The plaintiff-appellee Sulphur Springs Realty, Inc. filed its complaint, No. 81-CIV-30, in the Court of Common Pleas of Wood County against defendants-appellants alleging a failure to pay a real estate broker's commission.

The complaint consisted of four counts. In Count 1, plaintiff alleged that plaintiff and defendants entered into a written listing contract, whereby defendants granted plaintiff the exclusive right for a term expiring on October 7, 1980, to sell real property located at 105 Secor Woods Lane, Perrysburg, Ohio. The exclusive listing contract contained the following clause:

"If an offer is secured on the above terms, or an offer is secured which OWNERS accept in writing, or if the property is sold by SULPHUR SPRINGS REALTY, by OWNERS, or by any other person before the expiration of this agreement, or if within six (6) months after such expiration date it is sold, traded, or otherwise disposed of, directly or indirectly, to or for the benefit of any one with whom SULPHUR SPRINGS REALTY has had negotiations during the listing period, or if within a listing period it is rented to any such person and subsequently sold to such person, OWNERS agree to pay SULPHUR SPRINGS REALTY a commission of 7% of the purchase price for improved property and 10% of the purchase price for vacant land."

Plaintiff alleged that within six months after the expiration of the listing contract defendants sold the property to purchasers with whom plaintiff had had negotiations. Plaintiff further alleged that defendants breached their agreement to pay the commission due, and, as a result, plaintiff incurred damages.

In Count 2, plaintiff reiterates the fact that plaintiff requested defendants to pay the commission and payment is due and owing.

In Count 3, plaintiff alleged that defendants had been unjustly enriched in the amount of the commission.

Count 4 is in the nature of a declaratory judgment, wherein plaintiff seeks a decree declaring and determining that it is entitled to a commission under the provisions of the listing contract.

The defendants-Blackstones filed an answer, generally asserting defenses set forth in *Central Realty Co.* v. *Clutter* (1980), 62 Ohio St. 2d 411 [16 O.O.3d 441], and three counterclaims. In defendants' first counterclaim, defendants alleged that Michael G. Miller, plaintiff's President, executed an affidavit claiming that there was a real estate commission due plaintiff and that plaintiff claims an interest in the property and the proceeds of the sale in the amount of seven percent. Defendants alleged that the recording of the Miller affidavit created a cloud, material defect or encumbrance upon defendants' certificate of title to the real property, that the execution and recording of the Miller affidavit was without legal basis, unlawful, and that plaintiff knew, or should have known, that his conduct was unlawful. Defendants state that as a direct and proximate result of plaintiff's unlawful conduct, the closing of the aforementioned real estate transaction with the purchasers was hindered and delayed. Defendants alleged they were damaged by plaintiff's unlawful conduct and were entitled to compensatory damages. Defendants' second counterclaim alleges that plaintiff's conduct was intentional and was intended to harm the defendants, amounting to a *prima facie* tort and defendants are entitled to compensatory and punitive damages. The third counterclaim of defendants alleges that the affidavit contained false statements of material facts, that they were uttered with malice, and that plaintiff's conduct amounted to a slander or defamation of defendants' title, resulting in damage to defendants and entitling them to compensatory and punitive damages. Defendants-Blackstones also filed a complaint, No. 81-CIV-64, against Michael G. Miller in which they asserted against him the same matters raised in the counterclaims against Sulphur Springs.

Other facts which led to the filing of the complaint are as follows:

The listing contract referred to above expired on October 7, 1980. On October 9, 1980, the defendants-Blackstones entered into a written listing contract with Zachman & Associates, Inc., for the sale of the same property at a commission of two percent of the sale price. On October 11, 1980, the Blackstones entered into an agreement with purchasers for the sale of the property in the amount of $230,000. The purchasers had been shown the subject property by an agent of Sulphur Springs during the period of the listing contract. On October 7, 1980, Mr. Blackstone, one of the sellers, contacted Michael G. Miller by telephone and advised that he was not going to renew the listing contract with Sulphur Springs and inquired what would happen if Solaris, a prospective purchaser who had been shown the house during the listing contract, ultimately bought the house through another broker. Mr. Miller, President of Sulphur Springs, advised that Solaris could be excluded from the new listing or that Sulphur Springs would share any commission with a new broker under the normal co-broker relationship. This was confirmed in a letter dated October 9, 1980. On October 15, 1980, Michael G. Miller executed an affidavit claiming that there was a seven percent commission due Sulphur Springs and that Sulphur Springs claimed an interest in the property and the proceeds of the sale in the amount of seven percent of the sale price. Said affidavit was recorded in the Recorder's Office of Wood County. The sale of the property was delayed as a result of the filing of the affidavit, but was consummated on December 31, 1980. Sulphur Springs has not been paid a commission. Defendants-Blackstones moved for judgment on the pleadings and subsequently moved for summary judgment against Sulphur Springs on Counts 2 and 3 of its complaint and for partial summary judgment against Sulphur Springs on Counts 1 and 4 of its complaint.

In their motion for judgment on the

pleadings, defendants-Blackstones relied upon the case of *Central Realty Co.* v. *Clutter, supra.* Sulphur Springs Realty moved for summary judgment relative to defendants-Blackstones' counterclaims, asserting that it was entitled to judgment as a matter of law. The trial court consolidated the two causes of action. Michael G. Miller also moved the court to enter summary judgment, finding and determining that there was no genuine issue to any of the claims asserted against him, and he, too, was entitled to judgment as a matter of law. Sulphur Springs did not file a motion for judgment on the issue of its right to recover a judgment. The matter was considered by the trial court on the motions and it filed a memorandum opinion which contains findings of fact and conclusions of law. While under Civ. R. 56 the court may not weigh the evidence but is restricted to a finding that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, we assume that this was the thrust of the trial court's findings of fact. The trial court rendered a final judgment granting a real estate commission to Sulphur Springs Realty equal to four percent of the sale price of the real estate, to wit, $9,200. The motion for summary judgment of plaintiff-Sulphur Springs as to Blackstones' second counterclaim was sustained. The complaint of plaintiffs-Blackstones against Michael G. Miller was resolved in favor of Miller and the court decreed that plaintiffs-Blackstones should recover nothing. The court then rendered final judgment as to all claims of the parties but also included the words, "* * * there is no just cause for delay." This appeal followed.

Appellants-Blackstones filed twelve assignments of error. We first consider Assignments of Error Nos. I through VII. They are as follows:

"I. The trial court erred in awarding a commission in violation of the exclusive listing agreement.

"II. A real estate broker may not unilaterally alter the terms and conditions of a listing agreement without the consent of sellers.

"III. Changes in a contract made without consideration are not enforceable.

"IV. Under a co-broker agreement the selling broker must be the procuring cause and the court erred in awarding a commission after holding that the selling broker was not the procuring cause.

"V. A selling broker cannot recover a commission from seller but rather only from the listing broker and the selling broker's commission may not exceed the listing broker's commission.

"VI. The Blackstones' constitutional rights to due process and trial by jury were violated by the trial court in entering judgment for Sulphur Springs on the issue of Sulphur Springs' right to a commission.

"VII. A jury is to decide disputed issues of material fact."

In disposing of the foregoing assignments of error, we find *Central Realty Co.* v. *Clutter, supra,* controlling. In that case a majority of the Supreme Court held, at pages 412-413, as follows:

"In reviewing this clause, the trial judge found that appellee's evidence established that appellee had 'negotiated' with V. E. Merillat, and that the farm was sold within three months after the expiration of the August 4th listing. On the issue of whether the clause was supposed to have effect if a sale was made by another broker or only by appellant, the judge found the clause to be ambiguous. We agree with the trial judge when he stated: '* * * There is a doubt which the broker could have prevented by more explicit phraseology. The extension clause simply states "or is sold" but it does not say by whom. More explicit wording would have stated "or is sold by me alone or through another broker." The ambiguity and doubt is to be resolved against the plaintiff.'

"If the appellee wished to protect itself from the possibility of a sale by another broker, it could have explicitly provided for such an event. Without specific reference to such a possibility, the clause is ambiguous. The age-old maxim of *ambiguitas contra stipulatorem est* (an ambiguity is resolved against the stipulator) applies to the instant cause. See *Franck* v. *Railway Exp. Agency* (1953), 159 Ohio St. 343, 345-346 [50 O.O. 318], and *O'Neill* v. *German* (1951), 154 Ohio St. 565, 571 [44 O.O. 11]."

Being constrained to follow the holding in *Central Realty Co.*, we find that Sulphur Springs was not entitled to recover the commission from the Blackstones under the exclusive listing contract. Furthermore, we find no other contract entered into between the parties which provided for a commission. We find that the Blackstones were entitled to a judgment dismissing Sulphur Springs' complaint. For the foregoing reasons and to the extent thereof, Assignments of Error Nos. 1 through 7 are well-taken.

We now consider Assignments of Error Nos. VIII through X. They are as follows:

"VIII. When reasonable minds could differ the trial court may not defeat a claim for slander of title in an action to be heard by a jury by concluding that the published statements were made without malice.

"IX. The trial court may not defeat a claim for slander of title in an action to be heard by a jury by concluding that the published statements made were true when the statements were false.

"X. When reasonable minds would differ, the trial court may not defeat a claim for slander of title in an action to be heard by a jury by concluding that the published statements made were true."

The first issue to be considered is whether or not the affidavit by Michael G. Miller is authorized by law. Appellees rely upon R.C. 5301.252. Said section, in pertinent part, is as follows:

"(A) An affidavit stating facts relating to the matters set forth under division (B) of this section that may affect the title to real estate in this state, made by any person having knowledge of the facts or competent to testify concerning them in open court, may be recorded in the office of the county recorder in the county in which the real estate is situated. When so recorded, such affidavit, or a certified copy thereof, shall be evidence of the facts therein stated, insofar as such facts affect title to real estate.

"(B) The affidavits provided for under this section may relate to the following matters:

"* * *

"(3) The happening of any condition or event that may create or terminate an estate or interest."

This code section does not permit the filing of the affidavit by Sulphur Springs claiming that it has an interest in the property in the amount of seven percent of the sale price. As is stated in 10 Ohio Jurisprudence 3d 134, Brokers, Section 92, a mere agreement for brokerage to be computed as a percentage of the purchase price does not give the broker an equitable lien upon the real estate. Based on the evidentiary material submitted on the motions, we find reasonable minds could differ relative to the statements and the affidavit and the occurrence of damages. Said assignments of error are well-taken.

We now consider Assignment of Error No. XI, which is as follows:

"XI. The trial court erred in granting the motion of Sulphur Springs for judgment on Blackstones' prima facie tort claim."

The doctrine of *"prima facie* tort" is discussed in *Bajpayee* v. *Rothermich* (1977), 53 Ohio App. 2d 117 [7 O.O.3d 86]. In that case *"prima facie* tort" was defined at page 122 as:

"A so-called *prima facie* tort is the intentional infliction of injury upon another without excuse or justification by an act

which in and of itself may not be unlawful."

In 74 American Jurisprudence 2d 651, Torts, Section 38, we find the following relative to *prima facie* torts.

"What has come to be known as the prima facie tort doctrine was apparently first expressed in an English case in which it was said that 'intentionally to do that which is calculated in the ordinary course of events to damage, and which does in fact, damage another in that person's property or trade, is actionable if done without just cause or excuse.' In this country, the principle enunciated by Justice Holmes that 'prima facie, the intentional infliction of temporal damage is a cause of action, which, as a matter of substantive law, whatever may be the form of pleading, requires a justification if the defendant is to escape,' has led a number of courts to develop what has become a distinct action for prima facie tort, which has generally been interpreted to refer to a rather narrowly restricted specific remedy involving otherwise lawful conduct not giving rise to an action for some other tort maliciously intended to harm the complainant, and causing special damage, without justification.

"Prima facie tort has been defined as the infliction of intentional harms, resulting in damage, without excuse or justification, by an act or a series of acts which would otherwise be lawful. It has been said to be derived from the ancient form of action on the case, covering those situations where intentional harm has been inflicted, resulting in damage, by an act or series of acts which might otherwise be lawful and which do not fall within the categories of traditional tort action. However, the contention that the prima facie tort rule made actionable any intentional infliction of temporal damage has been rejected on the ground that if this were literally true, it would abolish all other forms and theories of action. In other words, prima facie tort does not embrace all intentional torts outside the classic categories of intentional torts." (Footnotes omitted.)

*Prima facie* tort is distinguished from traditional torts at 74 American Jurisprudence 2d 655, Torts, Section 42, as follows:

"It is generally held that conduct actionable under one of the traditional tort categories cannot be made the subject of an action for prima facie tort. Stated conversely, the prima facie tort cause of action is reserved for 'operative misconduct' not classifiable as a traditional tort."

See, also, Annotation, Prima Facie Tort, 16 A.L.R. 3d 1191.

We recognize the right of the Blackstones to plead alternative or inconsistent theories, Civ. R. 8 (E)(2); however, considering that *prima facie* tort has not been recognized in Ohio until the case of *Bajpayee* v. *Rothermich, supra,* and even this authority is equivocal in its application, that the parties to this appeal have not briefed this issue with any degree of detail and, further, since we have found that the first and third counterclaims are well-pleaded, we find appellants' eleventh assignment of error not well-taken.

We now consider Assignment of Error No. XII, which is as follows:

"XII. To the extent the trial court held that Michael Miller is not individually liable for is [*sic*] own torts, the court erred."

The substance of this assignment of error was not an issue in the court below; however, the issue may be pursued upon remand. Assignment of Error No. XII is not applicable and is considered withdrawn by appellants.

The judgment of the Court of Common Pleas of Wood County is vacated and reversed. Coming now to enter the judgment the trial court should have entered, the complaint of the plaintiff Sulphur Springs Realty, Inc., is dismissed at plaintiff's costs in cause No. 81-CIV-30.

These causes are remanded to the Court of Common Pleas of Wood County for further proceedings relative to defendants-Blackstones' counterclaims one and three in cause No. 81-CIV-30, and on plaintfiffs-Blackstones' complaint against Michael G. Miller in cause No. 81-CIV-64, on counts one and three.

*Judgment reversed.*

CONNORS, P.J., and McQUADE, J., concur.

McQUADE, JR., J., of the Court of Common Pleas of Fulton County, was assigned to the Sixth Appellate District in accordance with Section 5 (A)(3), Article IV, Constitution.