*By order of the Bankruptcy Appellate Panel, the precedential effect
of this decision is limited to the case and parties pursuant to 6th
Cir. BAP LBR 8013-1(b). See also 6th Cir. BAP LBR 8010-1(c).*

**File Name: 10b0013n.06**

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| In re:   FAYE FOODS, INC., | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| KABB PARTNERSHIP, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | No. 09-8075 |
| | ) | |
| v. | ) | |
| | ) | |
| FAYE FOODS, INC., | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| _____ | ) | |

Appeal from the United States Bankruptcy Court
for the Western District of Tennessee at Memphis.
Nos. 05-23072; 07-00056.

Argued:  November 9, 2010

Decided and Filed:  December 20, 2010

Before: FULTON, RHODES, and SHEA-STONUM, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ARGUED:** Richard S. Townley, BALLIN, BALLIN & FISHMAN, P.C., Memphis, Tennessee, for
Appellant.  Lawrence R. Ahern, III, BURR & FORMAN LLP, Nashville, Tennessee, for Appellee.
**ON BRIEF:** Richard S. Townley, Randall J. Fishman, BALLIN, BALLIN & FISHMAN, P.C.,
Memphis, Tennessee, for Appellant.  Lawrence R. Ahern, III, David W. Houston, IV, BURR &
FORMAN LLP, Nashville, Tennessee, for Appellee.

---

**OPINION**

---

MARILYN SHEA-STONUM, Bankruptcy Appellate Panel Judge. This is an appeal by Faye Foods, Inc. ("Faye Foods") from the bankruptcy court's order granting summary judgment to KABB Partnership ("KABB") and determining that Faye Foods is not entitled to any portion of the net proceeds from the sale of property subject to a lease between Faye Foods, as lessee, and KABB, as lessor, and finding that the real estate broker employed by the estate was not entitled to be paid a commission from the sale proceeds.

## I. ISSUES ON APPEAL

Whether the bankruptcy court erred in granting summary judgment to KABB.

## II. JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel (the "BAP") of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Western District of Tennessee, Western Division has authorized appeals to the BAP and none of the parties elected to have this appeal heard by the district court. 28 U.S.C. § 158(b)(6), (c)(1). A bankruptcy court's final order may be appealed as of right. 28 U.S.C. § 158(a)(1), (b)(6) and (c)(1). For purposes of an appeal, a final order "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Ashpalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citations omitted). The bankruptcy court's orders granting the motion of Plaintiff, KABB Partnership, for summary judgment and denying Faye Foods' motion for summary judgment are final orders and a reviewing court reviews such orders *de novo*. *Spradlin v Jarvis (In re Tri-City Turf Club, Inc.)*, 323 F.3d 439, 442 (6th Cir. 2003); *Cash Am. Fin. Servs. v. Fox (In re Fox)*, 370 B.R. 104, 109 (B.A.P. 6th Cir. 2007) (citing *Bailey v. Bailey (In re Bailey)*, 254 B.R. 901, 903 (B.A.P. 6th Cir. 2000)). "De novo means that the appellate court determines the law independently of the trial court's determination." *Treinish v Norwest Bank Minn., N.A. (In re Periandri)*, 266 B.R. 651,

653 (B.A.P. 6th Cir. 2001) (citations omitted). "No deference is given to the trial court's conclusions of law." *Id.*

Summary judgment is only appropriate when the evidence submitted shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Cicero v. Borg-Warner Automotive, Inc.*, 280 F.3d 579, 583 (6th Cir. 2002) (citing Fed. R. Civ. P. 56(c)); Fed. R. Bankr. P. 7056. When reviewing the record, all inferences must be drawn in the light most favorable to the non-moving party. *Spradlin*, 323 F.3d at 442. To withstand summary judgment, the non-moving party must provide more than a mere scintilla of evidence in support of its position. The non-moving party must come forward with some proof upon which the trier of fact could find for the non-moving party. Fed. R. Bankr. P. 7056(e)(2).

## III.   FACTS

Prior to filing its voluntary petition for relief on February 28, 2005 (the "Petition Date"), Faye Foods operated Krystal restaurants in Shelby County, Tennessee, including one located at 1730 North Germantown Parkway, Cordova, Tennessee (the "Cordova Property"). Faye Foods leased the Cordova Property from KABB pursuant to a lease agreement dated November 4, 1996 (the "Lease"). Paragraph 14 of the Lease granted Faye Foods an option to purchase the Cordova Property. Paragraph 14 of the Lease provides,

> Tenant shall have the right and option to purchase the Premises at the conclusion of the initial term or during any of the first, second or third additional terms, if any there be. If during the initial term, Tenant shall give written notice of her intent to exercise this option within ninety (90) days preceding the expiration of the initial term on November 3, 2006. ... The purchase price to be paid by Tenant at closing shall be a sum equal to the appraised value of the Premises as determined by an independent and qualified real estate appraiser, knowledgeable of commercial real estate values in Shelby County, who is mutually agreeable to the parties, plus ten percent (10%) of such appraised value. Notwithstanding anything to the contrary set forth herein below, the purchase price shall in no event be less than the outstanding indebtedness owed by Landlord and secured by the Premises.
>
> The parties shall close the sale of the Premises to Tenant as soon as practicable following the determination of the purchase price at a mutually agreeable date, time

and location. ... All other closing costs, including the cost of the appraisal, shall be equally borne by the parties.

The initial term of the Lease was stated to expire on November 3, 2006. According to Paragraph 24 of the Lease, Tennessee law applies to disputes concerning the Lease.

Shortly after the Petition Date, and prior to the expiration of the initial term of the Lease, KABB filed a motion to compel the assumption or rejection of the Lease. The motion to compel was resolved by agreement of KABB and Faye Foods and was memorialized in an agreed order, which provides in pertinent part:

> [T]he parties have reached an agreement to allow the debtor to continue under the lease during the balance of its initial term (which expires November 3, 2006) with certain modifications and that such modified assumption should be memorialized by order of the court.
>
> ...
>
> 2.    That the total arrearage amount of $89,499.56 shall be paid by the debtor with interest ...
>
> 3.    That the initial term <u>only</u> of the lease with KABB Partnership is deemed to be assumed by the debtor. The initial term so assumed shall expire November 3, 2006. Any renewal of any leasing agreement between the debtor and the landlord of the subject properties from and after November 3, 2006 (including any options to purchase or extensions of the lease term) shall be accomplished only upon such terms and conditions as the parties may agree.
>
> ... .

July 13, 2005 Order of Bankruptcy Court (the "Agreed 2005 Modified Assumption Order").

On April 26, 2005, while the motion to compel assumption or rejection was pending, Faye Foods filed an application to employ Dean Graves ("Graves") as real estate broker to sell or lease (as specified in the application) various properties of Faye Foods. With respect to the Cordova Property, Graves was granted an exclusive right to sublease the Cordova Property. His exclusive

listing expired in six months. The Debtor served the application on the United States Trustee and Graves, only. The application was not served on KABB. The bankruptcy court entered an order granting the application the day after it was filed. No objections were filed to the application, nor were any motions to vacate or reconsider the order granting the application filed.

On October 4, 2006, long after Graves's exclusive listing agreement ended, Faye Foods filed a Motion to Sell Real Property (the "Motion to Sell") seeking to sell the Cordova Property. In the Motion to Sell, Faye Foods asserted that it had an option to purchase the Cordova Property from KABB pursuant to the Agreed 2005 Modified Assumption Order and ¶ 14 of the Lease. According to the Motion to Sell, Faye Foods had obtained a contract for the sale of the Cordova Property from First Capital Bank for the sum of $1,097,500.00, which sum is greater than the payoff amount owed to KABB. Section 10 of the Purchase Contract provides for the payment of a 2% commission to Jackie Welch of Welch Realty Company, representing the Buyer. Section 10 also contains a representation by Faye Foods that no other broker or agent is due a commission from the proceeds of closing. According to the Motion to Sell, Faye Foods believed the sale was in the best interest of its bankruptcy estate because the sale would allow Faye Foods to satisfy the $89,000.00 administrative claim of KABB. Faye Foods did not assert that it was entitled to any of the proceeds of sale.

KABB objected to the Motion to Sell arguing that Faye Foods had no enforceable option to purchase the Cordova Property. The bankruptcy court conducted a hearing on the Motion to Sell. Eventually, Faye Foods and KABB agreed to the sale of the Cordova Property without resolving their dispute over Faye Foods' authority to sell it. Faye Foods and KABB agreed to transfer their respective claims to the net proceeds of the sale. Faye Foods contends that during the conversations concerning the sale of the property, KABB waived the provision in ¶14 of the Lease which requires an appraisal to determine the purchase price to be paid by Faye Foods (the "Purchase Price Provision").

The record is silent, however, on the parties discussions with respect to any entitlement to the net proceeds of the sale. Not even the Motion to Sell asserts that the Debtor is entitled to any "proceeds" generated from the sale of the Cordova Property.

Following an informal auction process, First Capital Bank emerged as the highest and best bidder with a bid in the amount of $1,220,000.00. The bankruptcy court entered an order on December 6, 2006 (the "Sale Order") approving the agreement of the parties to sell the Cordova Property to First Capital Bank for the price of $1,220,000.00. The proceeds of sale were to be disbursed to KABB "in the amount of $1,036,000.00 reduced by the payoff of the outstanding mortgage debt, ... and reduced by a commission not to exceed $40,000.00 which is asserted to be payable to Welch Realty by KABB." Sale Order. The balance of the proceeds were to be held in trust pending further order of the bankruptcy court. In addition, First Capital Bank agreed to reimburse debtor the sum of $2,500.00 for a cost which the debtor incurred for an appraisal of the subject property.[1] In addition, in the Sale Order, KABB agreed to waive all claims against Faye Foods, including its administrative expense claim in the amount of approximately $89,000.00.

On December 12, 2006, Graves filed a request for administrative expense payment seeking payment to him of a commission for the sale of the Cordova Property. According to Graves, he was employed as a real estate broker to sell the real estate possessed by the Faye Foods pursuant to an Order of the bankruptcy court. KABB objected on the basis that Graves was employed by Faye Foods and that Faye Foods had no valid right to sell the Cordova Property. On September 17, 2007, without making any factual findings about the services actually performed by Graves, the bankruptcy court entered an order authorizing the payment of a 4% brokerage fee to Graves, as an estate professional, finding it to be "reasonable compensation for actual services rendered to the estate," and directing it to be paid by Faye Foods' estate pursuant to § 503 of the Bankruptcy Code. Following the entry of this order, counsel for Graves filed a motion for immediate payment of administrative expenses. Faye Foods filed an objection to the motion for immediate payment, suggesting that the commission should be paid from the proceeds of the sale of the Cordova Property and requesting the Court deny the motion until such time as the court rules on the owner of the proceeds of sale. On November 19, 2007, the bankruptcy court entered an order directing Faye

---

[1]Earlier in this appeal, Faye Foods filed a motion for permission to supplement its appendix to include an appraisal report and KABB filed a response arguing that the appraisal had not been presented to the bankruptcy court and therefore was not properly a part of the record on appeal. The Panel denied Faye Foods' motion to supplement its appendix because the appraisal report had not been provided to the bankruptcy court in the first instance. In light of this prior ruling, the Panel finds that the bankruptcy court's factual finding that no appraisal was obtained was not clearly erroneous and will not devote any further portion of this opinion to Faye Foods' argument that is was.

Foods to make immediate payment of the administrative expense claim. No appeal was taken from this order.

Previously, on February 13, 2007, KABB had filed an adversary proceeding against Faye Foods seeking declaratory judgment regarding its entitlement to the net proceeds of the sale. (The "KABB AP") The issues in this appeal all arise from the bankruptcy court's ruling in the KABB AP. On February 26, 2007, Faye Foods filed an answer asserting its entitlement to the net proceeds of sale. The answer of Faye Foods does not assert that Graves should be paid from the proceeds of the sale.

On April 5, 2007, Graves filed a complaint to intervene in the KABB AP, asserting his entitlement to a 4% commission to be paid from the proceeds of the sale of the Cordova Property. No motion to intervene was filed by Graves. On July 24, 2007, KABB filed an answer to the intervening complaint asserting, *inter alia,* that the intervening complaint should be dismissed for failure to file a motion to intervene as required by Fed. R. Civ. P. 24, as made applicable to adversary proceedings by Fed. R. Bankr. P. 7024. On January 4, 2008, Faye Foods filed an answer to Graves's complaint. In its answer to the intervening complaint, Faye Foods requested that a lien for payment of Graves's commission be imposed on the proceeds of sale.

On June 29, 2009, cross motions for summary judgment were filed by KABB and Faye Foods. Graves did not file a motion for summary judgment nor a response to the motions of KABB or Faye Foods. A hearing was scheduled and held on the summary judgment motions. The transcript of the hearing is not part of the record on appeal. However, during the hearing the bankruptcy court apparently inquired about the Purchase Price Provision. Following the hearing, the Court allowed the limited supplementation of the record in support of the cross motions for summary judgment. In its supplement, Faye Foods argued that KABB had waived the Purchase Price Provision of the Lease. In support of its argument, Faye Foods submitted deposition excerpts which Faye Foods argues support its argument that the parties waived the Purchase Price Provision. KABB disagreed and continued to argue that the option to purchase was not preserved when the Lease was assumed and even if it was, Faye Foods failed to obtain an appraisal and there was no evidence of a waiver of the Purchase Price Provision. In support of its position that the Purchase

Price Provision was not waived, KABB attached the deposition transcript of Ms. Eunice Stiles, principal of Faye Foods.

The bankruptcy court found that there was a genuine issue of fact concerning the preservation of the option to purchase. However, the bankruptcy court determined the issue was immaterial. This is because, even assuming the option had been preserved and Faye Foods' intent to exercise it had been properly noticed, the procedures of the Purchase Price Provision had not been followed in that there had been no appraisal by a jointly approved appraiser. Therefore, the bankruptcy court filled the gap with its assessment that the purchase price should be based on the ultimate § 363 sale price and determined that Faye Foods would not be entitled to any of the proceeds of sale. Underlying the bankruptcy court's finding is a determination that the factual dispute over the waiver of the Purchase Price Provision need not be resolved because the Lease contains an anti-oral modification clause - "[it] may not be modified in any manner other than by agreement in writing signed by both parties and their successors in interest." Lease, ¶ 17.

Faye Foods argues that the bankruptcy court was mistaken and that it should have found, as a matter of law, that the option remained viable following the agreement to continue the Lease and that Faye Foods properly noticed its intent to exercise the option. In addition, Faye Foods argues that the bankruptcy court should have found as a matter of law that KABB waived the Purchase Price Provision.

With respect to the request of KABB in its summary judgment motion for a declaration that Graves's fee, which was previously allowed as an administrative expense of Faye Foods' estate, should not be "an assessment against the [Cordova] Property," the bankruptcy court found "[t]he record before the Court seems clear. Graves had a listing agreement with Faye Foods that provided for a commission to him in the event the property was sub-leased. Graves never had an agreement with KABB, the owner of the real property, for a commission in the event of sale of the property." In addition, the bankruptcy court found that Graves failed to oppose the summary judgment motion and pursuant to Federal Rule of Civil Procedure 56(e)(2) entered judgment against Graves.

# IV.   DISCUSSION

## A.   KABB v. GRAVES

The bankruptcy court granted KABB's motion for summary judgment, in part, because Graves failed to respond.  Faye Foods addressed KABB's request for relief against Graves, but the bankruptcy court did not consider it.  Although Faye Foods asserts on appeal that it stands as subrogee to Graves's claim, and KABB does not contest the assertion, there is no support for this legal conclusion.  Faye Foods did not raise this issue before the bankruptcy court, nor did Faye Foods develop its argument on appeal.  The fact remains that Graves did not participate in the summary judgment process and did not appeal from the bankruptcy court's judgment against him.  Faye Foods' assertion of Graves's alleged state law claims on appeal is not proper**.**

Furthermore, Faye Foods did not establish a basis for placing a lien against the proceeds of sale, nor did it establish a claim for unjust enrichment against KABB.  On summary judgment, the nonmoving party had an obligation to respond to KABB's request for judgment that Graves's fee, which has been allowed as an administrative expense of Faye Foods' estate, not be allowed as an assessment against the property with evidence sufficient to establish a genuine issue of material fact.  That obligation was not met.

Under the listing agreement  for the sublease of the Cordova Property, Graves was to be paid a commission of "Four (4%) of the total of lease payments in cash at the lease consumation(sic)."  The listing agreement further provided that if a "sublease is effected after the period of this agreement to a person or on behalf of a person to whom it was submitted by [Graves], Faye shall pay the said commission to [Graves]."  In this case, the agreement between Faye Foods and Graves did not provide for the establishment of a lien on the proceeds from the sublease of the Cordova Property, let alone the sale of it.  In addition, the initial purchase contract attached to the Motion to Sell filed by Faye Foods did not provide for the payment of a commission to Graves, but rather to Welch Realty.   In fact, it contained a representation by Faye Foods that there were no commissions payable from the proceeds, except as set forth in the purchase contract.  Notwithstanding, it is undisputed that an unappealed order entered by the bankruptcy court awards Graves, as an estate

professional, a commission for the sale of the Cordova Property. *See* Sept. 14, 2007 order of bankruptcy court (finding the 4% commission is reasonable compensation for actual and necessary services rendered to the estate and should be paid as an administrative expense of the estate).

In its response to the motion of KABB for summary judgment, Faye Foods asserted, beyond his entitlement to an administrative expense claim, Graves is also entitled to an equitable lien against the proceeds of sale, arguing that, if Graves is not paid from the proceeds of sale, KABB will be unjustly enriched. Faye Foods does not argue that this relief is available under the provisions of the bankruptcy code.[2] Rather, Faye Foods relies on state law.

Under Tennessee law, a distinction is drawn between a commission to be paid a broker based on a percentage of the sale price and a commission to be paid a broker based on the difference between the ultimate sale price and an agreed upon amount. In the later situation, the broker has a lien on the proceeds received for sale of property to the extent of the difference.

> There is quite a difference in a real estate broker's contract where he is to receive a five per cent commission upon the sale price of the property, and a contract where the contract provides that his compensation is to be an amount over and above the sale price. In the latter instance he has a lien on the proceeds over and above the sale price agreement.
>
> "A broker who is to receive all above a specified price as his commission for selling real estate may enforce a vendor's lien on the property for such sum as a part of the purchase money."

---

[2] Although not raised as a basis for the relief sought by Faye Foods, KABB notes that 11 U.S.C. § 506 is not applicable in this circumstance. KABB argues that 11 U.S.C. § 506(c) cannot be used by Graves to surcharge the proceeds of the sale. Faye Foods did not respond to KABB on this point either before the bankruptcy court or in this appeal. Furthermore, the bankruptcy court did not discuss the relevancy, if any, of 11 U.S.C. § 506 to these issues. 11 U.S.C. § 506 grants to the trustee [debtor in possession] the ability to recover from property securing an allowed secured claim the costs of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim. This case does not involve a secured creditor or an attempt to recover the costs of selling property of the estate which benefitted a secured creditor. This case involves an attempt by an estate professional (or more accurately, the debtor standing in the shoes of the estate professional) to surcharge the proceeds of property, that may not even have been property of the estate. 11 U.S.C. § 506(c) is not applicable in this circumstance. *See Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 7, 120 S. Ct. 1942, 1947 (2000) (finding that an administrative claimant could not properly use 11 U.S.C. § 506 to surcharge secured creditors).

*Duncan v. State*, 304 S.W.2d 625, 627-28 (Tenn. 1957) (quoting *Moss v. Thomas*, 218 Ala. 141, 117 So. 648, 58 A.L.R. 1495). Under the first scenario, the broker, unless the contract provided otherwise, does not have an equitable lien on the proceeds of sale. *See also, Sulphur Springs Realty, Inc. v. Blackstone*, 453 N.E.2d 1279, 1283 (Ohio App. 1982) (applying Ohio law which draws the same distinction as Tennessee law); *Kalmanoff v. Weitz*, 444 P.2d 728, 729 (Ariz. App. 1968) (even if the agreement is construed as a promise to pay the realty commission out of a particular fund, the appellant would not be entitled to a lien against the rents receipts or the property from which rent was collected); *Committee of Unsecured Creditors of Rama Group of Companies, Inc. v. Gottesman (In re Rama Group of Companies, Inc.)*, 2002 WL 1012974 (W.D. N.Y. May 6, 2002). In this case, the agreement, if applicable to the sale of the Cordova Property at all, falls into the former category. It does not establish Graves's right to an equitable lien.

In addition, Faye Foods argues that, under the theory of unjust enrichment, KABB should pay the commission from the proceeds of the sale of the Cordova Property. To recover under this theory requires more than just a showing that Graves provided, and KABB received, a benefit. Stating a claim for unjust enrichment requires that the enrichment was unjust. The claimant must show (1) a benefit conferred to the putative defendant, (2) appreciation by the putative defendant of such benefit, and (3) acceptance of such benefit under such circumstances that it would be inequitable for the putative defendant to retain the benefit without payment of the value thereof. *Freeman Indus., LLC v. Eastman Chemical Co.*, 172 S.W. 3d 512, 525 (Tenn. 2005). Faye Foods argues that a benefit was conferred to KABB as the result of Graves's "services in securing multiple bids that ultimately resulted in the sale of the property." KABB argues that it was not Graves, but its broker - Jackie Welch - who initially brought the purchaser to the table. KABB says it did not receive a benefit from Graves. Apparently KABB paid a commission to its own broker for the sale of the Cordova Property. KABB argues that it is unfair to make KABB pay two commissions because these are not the circumstances that would make it inequitable for KABB to retain the proceeds. Even construing the undisputed facts in the light most-favorable to the non-moving party, there are not any facts in the record that support a finding that Graves conferred a benefit on KABB or that it would be unjust to allow KABB to keep without paying for it.

Further, to be successful on an unjust enrichment claim, it must be shown that KABB should have had knowledge of Graves's efforts to sell the property. KABB was not served with the application to employ Graves, and even if it had been, the application to employ Graves did not purport to engage him for the purposes of listing the Cordova Property for sale. In addition, the motion to sell the Cordova Property which was served on KABB did not mention the efforts of Graves, and the only broker referenced in the attached purchase contract was someone other than Graves. It may be that KABB was aware of Graves's efforts, but nothing in the record supports such a factual conclusion. Therefore, the Panel concludes that summary judgment was properly granted to KABB with respect to any claim of Graves for a lien against the proceeds of the sale and affirms that portion of the bankruptcy court's decision.

**B.      KABB v. FAYE FOODS**

There is nothing in the record that supports Faye Foods argument that it is entitled to any of the proceeds from the sale of the Cordova Property. The deposition testimony cited by Faye Foods in support of its argument that KABB waived the Purchase Price Provision reveals only conversations regarding an acceptable minimum purchase price in exchange for which the administrative claim against Faye Foods would be waived. It does not support Faye Foods suggestion that it was an agreement to sell for a price certain and to allow Faye Foods to retain any proceeds of the sale above that price. So at best, Faye Foods established that the option to purchase was preserved and that the parties agreed not to require an appraisal to determine the purchase price. This is not sufficient to establish a genuine issue of fact as to whether Faye Foods was entitled to the proceeds of sale. To avoid summary judgment requires more than a mere scintilla of evidence that there is a genuine issue of fact. In this case, Faye Foods has not produced even a mere scintilla to show an agreement of the parties to a particular purchase price or to allowing Faye Foods to retain any of the proceeds of sale. In light of Faye Foods' failure to show the existence of a genuine issue of fact, the bankruptcy court properly granted summary judgment to KABB.

## V.   CONCLUSION

For the reason stated above, the Panel affirms the decision of the bankruptcy court.