WOLF, Appellant,

v.

LAKEWOOD HOSPITAL et al.; Cleveland Metropolitan
General Hospital, Appellee.

[Cite as *Wolf v. Lakewood Hosp.* (1991), 73 Ohio App.3d 709.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 58672.

Decided July 8, 1991.

*Herbert L. Bernsteen* and *Deborah Purcell Goshien,* for appellant.

*Deirdre G. Henry,* for Lakewood Hospital.

*Weston, Hurd, Fallon, Paisley & Howley* and *Stephen D. Walters,* for appellee Cleveland Metropolitan General Hospital.

*Michael M. Djordjevic,* for Dr. Kenneth W. Chapman.

JAMES D. SWEENEY, Judge.

Plaintiff-appellant Noreen T. Wolf ("Wolf") appeals from the granting of defendant-appellee Cleveland Metropolitan General Hospital's ("Metro's") motion for judgment on the pleadings.[1] For the reasons adduced below, we affirm.

A review of the record reveals that Wolf had arthroscopic surgery on her left knee on December 10, 1984. The surgery, shaving of articular cartilage, was performed at Lakewood Hospital by Dr. Kenneth W. Chapman.

On or about March 9, 1987, plaintiff became aware of the existence of a piece of metal in the left knee. Wolf gave Dr. Chapman and Lakewood Hospital notice of a prospective legal action on or about March 1, 1988, via certified mail. See R.C. 2305.11(A).

---

1. Cleveland Metropolitan General Hospital is now known as "MetroHealth Medical Center."

On February 16, 1988, a piece of metal was surgically removed from Wolf's left knee during a procedure performed at Metro. Subsequent to the surgery, plaintiff's counsel attempted to retrieve the piece of metal from Metro by issuing a letter of request to the hospital medical records department on March 3 and April 1, 1988.

On July 26, 1988, plaintiff's attorney was told by Metro's legal department that the piece of metal had probably been discarded by the pathology department since that department had no notice of retention for the Wolf gross surgical specimen during the normal thirty-day period of retention, after which time surgical specimens are discarded.

Plaintiff filed her original complaint on August 26, 1988, against Dr. Chapman and Lakewood Hospital in Count I, and Metro in Count II. An amended complaint was filed on September 2, 1988, alleging: (1) medical negligence in Count I against Dr. Chapman and Lakewood Hospital; and (2) "Ancillary Jurisdiction Prima Facie tort" in Count II against Metro.

Metro filed its answer to the amended complaint on September 30, 1988.

On January 26, 1989, Metro filed its motion for judgment on the pleadings based on failure to state a claim upon which relief can be granted.

Plaintiff filed a brief opposing judgment on the pleadings on March 1, 1989. Metro filed a reply brief on March 16, 1989. A response to the reply was filed on March 29, 1989 by plaintiff.

The court granted Metro's motion for judgment on the pleadings on September 22, 1989. On September 27, 1989, the court again granted Metro's motion, finding no just reason for delay. See Civ.R. 54(B). Plaintiff filed her notice of appeal on October 25, 1989. The medical negligence cause of action remains pending in the trial court.

The sole assignment of error is whether the court erred in granting judgment on the pleadings when plaintiff allegedly stated a valid cause of action by notice pleading requirements.

 For a court to dismiss a complaint for failing to state a claim upon which relief can be granted, it must appear beyond a doubt that the allegations in the complaint can prove no set of facts which, when construed most favorably to the plaintiff, would entitle him to relief. *O'Brien v. University Community Tenants Union* (1975), 42 Ohio St.2d 242, 71 O.O.2d 223, 327 N.E.2d 753. The determination of the motion for judgment on the pleadings is restricted solely to the allegations in the pleadings. *Peterson v. Teodosio* (1973), 34 Ohio St.2d 161, 166, 63 O.O.2d 262, 264, 297 N.E.2d 113, 117.

Count II of the amended complaint provides the following at pages 4 through 6 inclusive:

"COUNT II—ANCILLARY JURISDICTION PRIMA FACIE TORT

"8. Plaintiff repeats the allegations of Paragraphs 1 through 7 as if fully set forth herein.

"9. At all times mentioned herein Defendant, Cleveland Metropolitan General Hospital, was licensed and was authorized to engage and did engage in the business of providing medical services for the care and treatment of persons suffering from physical and other ailments of the body.

"10. Plaintiff underwent surgery for removal of the metal piece/foreign object on or about February 16, 198[8], at Defendant, Cleveland Metropolitan General Hospital, which retained the piece of metal.[2] [Footnote added.]

"11. Plaintiff requested at the time of surgery, and on and after March 3, 1988, through properly signed notarized authorizations, to examine and/or obtain the piece of metal in order to determine the size, shape, origin, presence or absence of defects, name of manufacturer and design so as to proceed properly with the above claim, and so as to properly determine the origin of her pain and further diagnose and evaluate her medical problems.

"12. Plaintiff telephoned numerous times and made an additional certified mail request on April 2, 1988, and was continuously told that she could have access to the metal, but was given various excuses and refused access to the piece of metal, until her attorney was finally personally informed after a trip to the hospital legal department on or about July 26, 1988, that the hospital had 'thrown away' the piece of metal.

"13. Defendant Cleveland Metropolitan General Hospital['s] deliberately and defiantly 'throwing away' the piece of metal after proper immediate requests for it had been made while all the while insisting to Plaintiff that it was being retained in the ordinary course of its business and would be available for inspection and future use constitutes a prima facie tort, and is an outrageous, malicious, intentional, negligent and grossly negligent interference in Plaintiff's right and ability to proceed with the above litigation and further constitutes a malicious and intentional fraud upon the Plaintiff to deprive the Plaintiff of vital evidence needed to proceed and to evaluate her medical condition, such evidence being solely and completely under the care and control of Defendant, Cleveland Metropolitan General Hospital, for which damages and punitive damages are an appropriate remedy.

"14. Plaintiff has been damaged by being unable to properly evaluate her medical condition and by being hampered in her ability to proceed effectively

---

2. The year of the injury was stated incorrectly in the pleading and subsequently corrected to 1988 by notice to the court.

with her medical negligence case against Defendants, Lakewood Hospital and Dr. Kenneth W. Chapman.

"WHEREFORE, Plaintiff, Noreen T. Wolf, prays for damages, punitive damages, her costs, attorney fees and all other appropriate relief, both legal and equitable."

 Pleadings are to be construed so as to do substantial justice, and claims for relief should concisely set forth only those operative facts as are necessary to give "fair notice of the nature of the action." *Salamon v. Taft Broadcasting Co.* (1984), 16 Ohio App.3d 336, 16 OBR 385, 475 N.E.2d 1292; Civ.R. 8(A), (E), and (F). Thus, we must look beyond the title given to the cause of action in the pleadings and examine the language of the pleadings to determine if plaintiff has stated any cognizable claim for relief.

 The most obvious cause of action alleged by plaintiff is a "prima facie" tort for intentional interference with a prospective non-commercial advantage through the spoliation of evidence, to wit, the loss of the metal taken from Wolf's knee prior to the initiation of the lawsuit.[3] See Amended Complaint, at paragraph 13. The advantage interfered with is the cause of action against Lakewood Hospital and Dr. Chapman.

The Supreme Court in *Costell v. Toledo Hosp.* (1988), 38 Ohio St.3d 221, 223, 527 N.E.2d 858, 859, discussed the prima facie tort doctrine:

"A 'prima facie tort' is defined as 'the infliction of intentional harm, resulting in damage, without excuse or justification, by *an act or series of acts which would otherwise be lawful.* * * *

" 'Prima facie tort may be invoked when the intention to harm is present, rather than the intention to merely commit the act. * * * *Inquiry into the issue of whether a duty exists and to whom it is owed is inappropriate* in a prima facie tort action.

" ( * * *

" 'The need for the doctrine of prima facie tort arises only because the specified *acts relied upon*—and which it is asserted caused the injury—*are not, in the absence of the intention to harm, tortious, unlawful, and therefore, actionable.*' Acme, Plaintiff's Proof of a Prima Facie Case (1986) 658, Sections 19:01–19:02. See, also, *id.*, cases collected in footnotes following Section 19:02; *Bajpayee v. Rothermich* (1977), 53 Ohio App.2d 117, 122, 7 O.O.3d 86, 89, 372 N.E.2d 817, 820; Notes, The Prima Facie Tort Doctrine (1952), 52 Colum.L.Rev. 503; Brown, The Rise and Threatened Demise of the Prima Facie Tort Principle (1960), 54 N.W.U.L.Rev. 563.

---

**3.** See Prosser & Keeton, Law of Torts (5 Ed.1984) 1105–1108, Section 130.

"We note that Ohio's courts have not adopted the above-described intentional tort theory. Moreover, such theory has been expressly rejected on the basis that the motive behind an action is not material when one has a legal right to perform such act. *Lancaster v. Hamburger* (1904), 70 Ohio St. 156, 71 N.E. 289; *Frazier v. Brown* (1861), 12 Ohio St. 294; *Letts v. Kessler* (1896), 54 Ohio St. 73, 42 N.E. 765." (Emphasis added.)

By plaintiff's own language in her pleadings, the acts relied upon for the cause of action "constitut[e] a prima facie tort." Amended Complaint, paragraph 13. The assertion of a prima facie tort is not one for which relief may be granted. *Costell v. Toledo Hosp., supra.* The court correctly granted judgment on the pleadings for interference with an advantage by spoliation of evidence.

■ Appellant argues that the spoliation theory was only one of several causes of action against Metro contained in the amended complaint by way of notice pleading. The other allegedly stated causes of action are: (1) tortious interference with an advantageous relationship; (2) common-law breach of contract; (3) theft; (4) fraud; and (5) breach of common-law duty. Appellant's brief, at 6.

Plaintiff's advantageous relationship, mentioned in the preceding paragraph, is her right and ability to pursue her medical negligence claim against Lakewood Hospital and Dr. Chapman.

Breach of contract refers to the breach of plaintiff's contract for Metro's medical services in removing the metal from the knee and throwing the metal away, thereby not performing proper records retention.

The theft claim is nonexistent in civil law. Rather, the claim is rightfully termed as a tort of "conversion." Appellant basically alleges that Metro wrongfully exerted dominion or control over the personal property (the metal) of Wolf in denial of her ownership rights therein by destroying the specimen. See *Ohio Tel. Equip. & Sales, Inc. v. Hadler Realty Co.* (1985), 24 Ohio App.3d 91, 24 OBR 160, 493 N.E.2d 289, paragraph one of the syllabus.

The fraud refers to Metro's actions in misrepresenting the fact that the hospital retained the metal so as to deprive plaintiff of vital evidence needed in her medical negligence claim.

The breach of duty refers to plaintiff's alleged contract with Metro. She argues that, as a patient, she had a right to rely on the hospital to retain the metal subsequent to her requests for retention. This is rightfully an act of negligent misrepresentation, with the "breach of duty" and right to rely as elements of the cause of action.

The one element common to the vesting of actions in tort and contract is the necessity of actual damages. *Midwest Specialties, Inc. v. Firestone Tire & Rubber Co.* (1988), 42 Ohio App.3d 6, 536 N.E.2d 411 (claim for breach of contract occurs when the complaining party suffers actual damages as a result of the alleged breach); *Vasu v. Kohlers, Inc.* (1945), 145 Ohio St. 321, 332, 30 O.O. 542, 547, 61 N.E.2d 707, 714 (actual damages required in negligence and tort actions); Prosser & Keeton, Law of Torts (5 Ed.1984) 165, Section 30, and 765, Section 110. Any damages herein would become apparent only after the conclusion of Wolf's medical negligence cause of action. Since that claim is still pending, plaintiff cannot show actual injury proximately resulting from the loss of the lacking evidence. Accordingly, plaintiff has failed to state a valid claim for relief for: (1) tortious interference with an advantageous relationship; (2) breach of contract; (3) fraud; and (4) common-law duty.

Turning to the "theft" cause of action, *i.e.*, conversion, we note that:

"Not every failure to deliver upon demand, however, will constitute a conversion. The defendant does not become a converter when the goods are no longer in his possession or control, so that the defendant is *unable to comply with the demand*, even though they may have been *lost* or *destroyed through the defendant's own fault. The remedy in such a case is an action for negligence.*" (Citations omitted and emphasis added.) Prosser & Keeton, Law of Torts (5 Ed.1984) 99, Section 15.

As already explained, plaintiff's cause of action for negligence fails to state a claim for relief due to the lack of actual damages at the present time. Thus, the "theft"/conversion claim is premature.

Appellant, in her brief, mentions that she had a "bailment situation" with Metro. It is not alleged in the amended complaint that any compensation was given to Metro for safekeeping the metal piece; therefore, there was no benefit to the bailee. Metro would be considered at best, for sake of argument, a constructive or gratuitous bailee of the article. See *United States Fire Ins. Co. v. Paramount Fur Serv., Inc.* (1959), 168 Ohio St. 431, 7 O.O.2d 267, 156 N.E.2d 121, paragraph four of the syllabus.

The essential elements of a contract of bailment are (1) the contract of bailment, (2) delivery of the bailed property to the bailee, and (3) failure of the bailee to redeliver the property at the termination of the bailment. *David v. Lose* (1966), 7 Ohio St.2d 97, 36 O.O.2d 81, 218 N.E.2d 442, paragraph one of the syllabus.

A reading of the amended complaint fails to disclose a delivery of the metal to Metro. Plaintiff's allegation in paragraph 10 that the metal was surgically

removed and was retained by Metro is not equivalent to an affirmative act of delivery by Wolf. Lacking an element of bailment, plaintiff has failed to state a claim upon which relief can be granted.

Assignment overruled.

*Judgment affirmed.*

FRANCIS E. SWEENEY, P.J., and HARPER, J., concur.