MOHAN J. DURVE, M.D., INC., Appellee,

v.

OKER et al., Appellants.

[Cite as *Mohan J. Durve, M.D., Inc. v. Oker* (1996), 112 Ohio App.3d 432.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 69636.

Decided July 8, 1996.

*Ruth A. Gibson,* for appellee.

*Edward L. Bettendorf* and *Michael R. Oker,* for appellants.

JAMES D. SWEENEY, Presiding Judge.

Defendants-appellants, Shannon Oker and her father Michael Oker, appeal from the trial court's order which granted the summary judgment filed by the plaintiff-appellee, Mohan J. Durve, M.D., Inc. ("Durve, Inc."). Durve, Inc. filed suit when its fees for services rendered to Ms. Oker were not paid. The parties have settled the underlying debt. This appeal concerns the trial court's order granting summary judgment for the appellee on the appellants' counterclaim for emotional distress, invasion of privacy, defamation, and violations of Section 1692 *et seq.*, Title 15, U.S. Code, the Fair Debt Collection Practices Act ("FDCPA").

Dr. Durve treated Shannon Oker between November 1991 and May 24, 1993. For most of the time that Ms. Oker was a patient of Dr. Durve, she was a minor. Her father, Michael Oker, was the party responsible for payment of any needed medical services. Mr. Oker, through his employer, had medical insurance with Community Mutual Blue Cross/Blue Shield ("Blue Cross").

It is clear from the record that some amount of money was owed to the appellee for services rendered to Shannon. The appellee, in seeking to collect on the debt, first sent bills, and then a letter from the "International Special Audit System," and ultimately the appellee sent the account to a debt collection agency, Hudson & Keyse, Inc. ("Hudson"). The final letter prior to suit being filed was from attorney Ruth Gibson from the office of Jerome L. Holub & Associates.

The evidence in the record shows that the following communications were received by one or both of the appellants:

1. June 7, 1993—a bill from the appellee for $302.80.

2. July 9, 1993—letter from International Special Audit System listing the amount due as $137.80.

3. August 18, 1993—letter from appellee indicating that the amount due was $137.80, stating that the appellee instructed attorneys to take legal action, and stating that suit would be filed to recover legal expenses and fees.

4. September 1, 1993—a bill from the appellee for $289.30.

5. September 16, 1993—a notice from the collection agency, amount due listed as $289.30. A written request for clarification was then sent by the appellants.

6. September 29, 1993—a notice from Hudson which verified that the amount due was $289.30.

7. December 15, 1993—a notice from Hudson stating that the amount due was $154.30.

8. December 27, 1993—a notice from Hudson stating that the amount due was $154.30.

9. January 14, 1994—letter from attorney Gibson stating that the amount due was $154.30.

On March 25, 1994, Durve, Inc. filed an action against Ms. Oker in the Garfield Municipal Court seeking $154.30 on an account. Attached to the complaint as an exhibit was an explanation of the bill. The address given for Ms. Oker on the complaint was the Brecksville, Ohio address of her father. Service was incomplete, as Ms. Oker lived in North Royalton, Ohio. On May 6, 1994, the attorney for Durve, Inc. sent a letter to the Ohio Department of Highway Safety, Bureau of Motor Vehicles, seeking the current address of Ms. Oker.

On September 20, 1994, Ms. Oker filed an answer and counterclaim. The appellee filed a motion to dismiss the counterclaim pursuant to Civ.R. 12(B). Ms. Oker responded with a motion to change venue and requested that the ruling on the motion to dismiss be deferred. On December 9, 1994, the court granted the motion and transferred the case to the Parma Municipal Court.

The appellee filed a motion to amend the complaint to join Mr. Oker as a defendant and filed an amended complaint. The court, in its order of March, 28, 1995, granted the motion to join Mr. Oker as a defendant and permitted the amended complaint. The court also stated its intention of converting the motion to dismiss into a motion for summary judgment. The appellants submitted a joint amended answer and counterclaim to which the appellee responded.

Discovery commenced. The appellee filed a motion for protective order and on April 13, 1995, the appellants filed a brief in opposition. The appellants filed a motion to compel, to which the appellee responded and the appellants filed a brief in reply. The appellants sought copies of the contract between the appellee and Blue Cross, between the appellee and International Special Audit System, between the appellee and Hudson, and between the appellee and Jerome L. Holub & Associates. The appellants sought also a legible copy of a letter from Ruth Gibson to Shannon Oker dated January 14, 1994.

The appellee sought to protect the relationship between it and Jerome L. Holub & Associates due to attorney-client privilege, sought to have the request for the production of Ms. Oker's entire medical file protected due to patient-physician privilege, and sought to have the letter between Gibson and Ms. Oker protected due to the fact that it was already in the possession of the appellants and because it is subject to a work product privilege.

The trial court's order issued on June 2, 1995, denied the motion to compel and held that the requests by the appellants might not be relevant. In addition, the court's order granted the appellee's motion for protective order and specifically held that the doctor-patient privilege had not been waived. The court concluded that the matter could be further discussed at the next pretrial conference.

On June 29, 1995, the appellee filed a motion for summary judgment. The appellants filed their brief in opposition on July 31, 1995. Attached to the appellee's motion are the affidavits of Mohan Durve, M.D. and his employee, Donna Fousek.

In his affidavit Durve stated that he participated in a program offered by Mr. Oker's insurer, Blue Cross, whereby a portion of charges for services were paid by the insurer, a portion disregarded, and a portion was to be paid by the insured. Durve affirmed that periodic billing statements were sent at his direction by his employees or agents. He also affirmed that he did not publicize the debt owed to him in any manner inconsistent with the right to collect a just debt, that he did not bill for inaccurate or inconsistent amounts or for amounts not due, that he did not bill any amount which was due from a third party or for a portion to be disregarded under the insurance coverage of the appellants, and that he did not fail to comply with the applicable federal and state provisions regarding debt collection.

Donna Fousek affirmed that she is employed by the appellee, that the account of the appellants was under her custody and control, that attached exhibits A, C, D, and E were accurate and maintained in the ordinary course of business, that at no time were inaccurate billing statements sent demanding payment on the appellants' account, that all payments, credits and adjustments have been made to the Oker account, that no sum is due from a third party, that the sum of $154.30 remains due and owing, that reasonable care has been taken in billing and courtesy, prudence and confidentiality have been extended in all dealings with the Okers, that periodic bills were sent explaining costs, credits and insurance payments, and that explanations have been provided by letter and by telephone.

In their brief in opposition to the motion for summary judgment, the appellants argued both that the appellee had violated the FDCPA in its attempts to seek remuneration for services to Ms. Oker, and that the appellee had attached as exhibits documents not permitted under Civ.R. 56.

The appellants allege that the appellee violated the FDCPA when it repeatedly issued inaccurate and inconsistent bills, knowingly violated the FDCPA when it permitted debt collectors to pursue the bill when the appellee knew the amount of the debt was disputed, sent a bill for more than the appellants' total deductible when it knew that the appellants were not responsible for such amount under the agreement with Blue Cross, and misrepresented itself by sending a letter to the appellants purportedly from the International Special Audit System.

Attached to the brief in opposition of the motion for summary judgment is the affidavit of Mr. Oker. In the affidavit he states that his daughter Shannon Oker was a patient of Dr. Durve, that she has been a long-term resident of North Royalton, that Dr. Durve agreed to accept as payment for his services the usual customary rate of Blue Cross, and that he, Michael Oker, was responsible for the deductible.

As to the letters received by the appellants attempting to collect the debt, Mr. Oker affirmed that on June 7, 1993, Ms. Oker received a bill at his home for $302.80 and that some or all of this amount was the responsibility of Blue Cross, that on September 1, 1993, Ms. Oker received another bill at the home of Mr. Oker for the sum of $289.30, and that on September 16, 1993, Dr. Durve caused his collection agent, Hudson, to send Ms. Oker a dunning letter claiming that the amount due was $289.30.

Mr. Oker affirmed that on or about September 21, 1993, he returned the letter of September 16, 1993, with a note on the back requesting verification of the actual amount due. Mr. Oker affirmed that he had previously requested clarification, but had not been given a satisfactory answer and therefore he submitted a written request. Mr. Oker stated that on September 29, 1993, Durve caused his

collection agent, Hudson, to send another letter which purported to verify the alleged $289.30 amount due. There was no explanation of the codes and other entries on the document, which was otherwise indecipherable and inaccurate.

Mr. Oker also affirmed that this series of inconsistent and inaccurate billings prompted his daughter to seek medical services from another physician.

During September Mr. Oker received from Blue Cross an explanation of benefits which showed that the $150 deductible had been met. This fact, together with a credit showing from Dr. Durve of $101, was the basis for Mr. Oker's continuing requests for clarification of the actual amount due and owing.

Mr. Oker affirmed that on December 15, 1993, the appellee, through Hudson, sent another dunning letter for $154.30 without verification or explanation. This letter threatened a civil suit and damage to the appellants' credit history. A similar letter was sent to the appellants on December 29, 1993.

On January 14, 1994, the appellee, by and through Hudson, caused attorney Gibson to send Ms. Oker another letter showing the sum due as $154.30. The letter demanded that the sum be paid to the attorney within seven days. Mr. Oker affirmed that because he had already unsuccessfully sought clarification, he did not believe it would do any good to communicate further with Durve, Hudson, or Gibson.

As evidence, attached to the appellants' brief are nine exhibits. Exhibit four is the handwritten note from Mr. Oker to Hudson regarding its letter of September 16, 1993. In this note, Mr. Oker suggests that Hudson be careful or it and its client "will be facing a counterclaim that will not only far exceed the amount you seek, but will also be much more valid." Mr. Oker suggests that the figures be checked, and states that the appellee's billing practices are the sloppiest he has ever encountered.

Exhibit five is the letter from Hudson to Mr. Oker stating, "I am unable to determine from your letter what part of the bill, if any, is in question or what figures you want us to check." The letter reiterates that amount due is $289.30. The computer printout attached to the letter does not help resolve the issue of the amount of the remaining debt.

Exhibit six is a letter from Blue Cross to Ms. Oker dated September 15, 1993, indicating that the $150 deductible for the benefit period of January 1, 1993 through December 31, 1993 had been met.

The appellants have set forth two assignments of error.

The first assignment of error states:

"The trial court erred in granting plaintiff's consolidated motion to dismiss counterclaim and motion for summary judgment on the amended answer and counterclaim, including:

"A. Considering matters outside the scope of Civil Rule 56(C) and otherwise inadmissible under Ohio Evidence Rule 802;

"B. Ignoring plaintiff/appellee's admissions and other undisputed evidence of plaintiff/appellee's unfair debt collection practices;

"C. Rejecting defendant/appellants' allegations of defamation, invasion of privacy, and/or infliction of emotional distress;

"D. Basing its decision for plaintiff/appellee on records which plaintiff/appellee had not provided in discovery, including but not limited to plaintiff/appellee's 'Exhibit E' to plaintiff/appellee's motion for summary judgment; and,

"E. Refusing to honor the Fair Debt Collection Practices Act component of the counterclaim."

In addressing this assignment we note the following language by Judge Krupansky as contained in *Wilkerson v. Eaton Corp.* (Mar. 10, 1994), Cuyahoga App. No. 65812, unreported, 1994 WL 77719:

"Civ.R. 56(C) specifically provides that before summary judgment may be granted, the court must determine that (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to only one conclusion, and viewing such evidence most strongly in favor of the non-movant, the conclusion is adverse to that party. *Osborne v. Lyles* (1992), 63 Ohio St.3d 326 [587 N.E.2d 825].

"A motion for summary judgment forces the nonmoving party to produce evidence on issues for which that party bears the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108 [570 N.E.2d 1095] (syllabus). The evidentiary materials must be timely filed. Civ.R. 56(C). The non-movant must also present specific facts and may not rely merely upon the pleadings or upon unsupported allegations. *Shaw v. J. Pollack & Co.* (1992), 82 Ohio App.3d 656 [612 N.E.2d 1295]." See, also, *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 322–323, 106 S.Ct. 2548, 2552–2553, 91 L.Ed.2d 265, 273–274.

Additionally, "[t]he dispute must be 'material' in that the facts involved have the potential to affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211. The issue to be tried must also be 'genuine,' allowing reasonable minds to return a verdict for the nonmoving party. *Id.* 477 U.S. at 248–252, 106 S.Ct. at 2510–2512,

91 L.Ed.2d at 211–214." *Manofsky v. Goodyear Tire & Rubber Co.* (1990), 69 Ohio App.3d 663, 666, 591 N.E.2d 752, 754.

■ Although the appellants set forth five subparts in this assignment of error, the last will be discussed first. In Subpart E the appellants argue that the trial court erred when it held that the appellants failed to state a claim under the FDCPA. The appellants acknowledge that the trial court, despite finding that the FDCPA was not applicable, went on to determine that if the statute were applied to the facts before it, the appellee's actions did not constitute violations of the FDCPA.

■ In the amended counterclaim at paragraph two, the appellants alleged that the appellee "failed to observe fair debt collection practices as required by law." Civ.R. 8(A) states that a pleading shall contain a short plain statement of the claim showing the party is entitled to relief. *Cole v. Johnson & Sons* (Sept. 21, 1995), Cuyahoga App. No. 68174, unreported, 1995 WL 558897. Civ.R. 8(E)(1) states that each averment of a pleading shall be simple, concise, and direct. No technical forms of pleading are required. See *Illinois Controls, Inc. v. Langham* (1994), 70 Ohio St.3d 512, 526, 639 N.E.2d 771, 782–783, where the court held that a party is not required to plead the legal theory of recovery or the consequences which naturally flow by operation of law. The trial court incorrectly held that the appellants failed to sufficiently allege a violation of the FDCPA.

This error, however, was harmless as the court went on to discuss its reasons for granting the motion for summary judgment under the FDCPA. It must be concluded, however, that the court erred in its determination that there was no violation of the FDCPA.

■ The FDCPA is an extraordinarily broad statute. Congress addressed itself to what it considered to be a widespread problem, and to remedy that problem it crafted a broad statute. The statute must be enforced as written. See *Frey v. Gangwish* (C.A.6, 1992), 970 F.2d 1516. The Sixth Circuit, in *Wright v. Fin. Serv. of Norwalk, Inc.* (C.A.6, 1994), 22 F.3d 647, 650, also held:

"We believe that the purpose of the FDCPA and the legislative history of the act also support this conclusion. The FDCPA's purpose is 'to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.' 15 U.S.C. § 1692(e). In outlining the need for passage of the FDCPA, the Senate declared that debt collection abuse was 'a widespread and serious national problem.' S.Rep. No. 382, 95th Cong., 1st Sess. 2 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1696. Congress, however, chose to

leave enforcement to private, not governmental, means. S.Rep. No. 382, at 5, reprinted in 1977 U.S.C.C.A.N. at 1699."

 Violations of the FDCPA are reviewed from the standpoint of the least sophisticated consumer. *Smith v. Transworld Sys., Inc.* (C.A.6, 1992), 953 F.2d 1025, citing *Jeter v. Credit Bur., Inc.* (C.A.11, 1985), 760 F.2d 1168. In addition, it must be remembered that an action under FDCPA is not contingent on the validity of the underlying debt. *McCartney v. First City Bank* (C.A.5, 1992), 970 F.2d 45.

The appellants have alleged numerous violations of the FDCPA, but this opinion will only consider those raised before the trial court. The following sections will be considered:

Section 1692e, Title 15, U.S. Code:

"A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

"(2) The false representation of—

"(A) the character, amount, or legal status of any debt; or

" * * *

"(8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

" * * *

"(14) The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization."

Section 1692f:

"A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

"(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

Section 1692g:

"(b) If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the

original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector."

Section 1692i:

"(a) Any debt collector who brings any legal action on a debt against any consumer shall—

"(1) in the case of an action to enforce an interest in real property securing the consumer's obligation, bring such action only in a judicial district or similar legal entity in which such real property is located; or

"(2) in the case of an action not described in paragraph (1), bring such action only in the judicial district or similar legal entity—

"(A) in which such consumer signed the contract sued upon; or

"(B) in which such consumer resides at the commencement of the action."

■ Pertaining to Section 1692e(2)(A), the appellants allege that the appellee falsely represented the amount of the debt on several occasions. In his affidavit, Dr. Durve stated, "There remains a sum due and owing by Michael R. Oker and Shannon Oker since the date of last service on May 24, 1993. The sum is $154.30, which, despite timely and appropriate requests for payment, remains unpaid for more than two years." In contrast, the evidence is clear that bills were sent for varying amounts: June 7, 1993 for $302.80; July 9, 1993 for $137.80; September 1, 1993 for $289.30. This evidence, in contrast to Durve's affidavit, is sufficient to create a question of fact as to whether the appellee falsely represented the debt.

■ A question of fact has been raised as to whether the appellee failed to communicate that the debt was disputed under Section 1692e(8). The appellants' note to Hudson in September 1993 was an indication that the amount of the debt was disputed, and yet a letter was received from Gibson in January 1994.

■ The evidence also shows that the appellee, through the office manager, sent a letter to the appellants on July 9, 1993, which purported to be from the International Special Audit System. This letter is sufficient to raise a question of fact as to whether there was a violation of the prohibition against using a business, company or organization name other than the true name of the debt collector's business, company or organization. See Section 1692e(14).

■ The appellants have shown that a question of fact exists as to violations under Section 1692f by placing in evidence the letter from the appellee stating that suit would be filed and that it would recover legal expenses and fees. There

is no evidence in the record to suggest that there was any agreement between the parties which would enable the appellee to recover such expenses or fees.

The appellants have raised a question of fact under Section 1692g(b) by providing evidence that a written note was sent to Hudson in September 1993. Although the appellee did have Hudson send some sort of verification with its next request for payment, the letter from Hudson to the appellants dated September 29, 1993, still requests payment for the wrong amount and the verification is indecipherable, using the standard of the least sophisticated consumer.

Finally, the appellants have alleged that the appellee violated Section 1692i by initially filing the action in the wrong municipal court when it knew from its own records that Shannon Oker did not live in Brecksville, but rather was a long-time resident of North Royalton. Whether the records were sufficient for the appellee to have been on notice of Ms. Oker's correct address is a question of fact.

For these reasons, the trial court erred when it determined that no question of fact existed under the FDCPA and granted the appellee's motion for summary judgment.

In subpart B, the appellants assert that the doctor had a contract with Blue Cross which the court ignored. The appellants contend that the court incorrectly determined that if there were billing problems, they were between the appellants and their insurance company and incorrectly found the doctor to be merely a third-party beneficiary to the appellants' contract with Blue Cross.

Durve admitted that such a contract was in existence when he affirmed that he participated in a program offered by Blue Cross. The appellee stated that the insurance carrier paid a portion of its fee, that a portion was disregarded as an adjustment and that a portion was payable by the insured.

Viewing the affidavit given by Dr. Durve in the light most favorable to the appellants, a question of fact exists as to whether the bills sent to the appellants could be construed as an attempt to collect the portion of the bill which should have been disregarded as an "adjustment." Any attempt to collect monies not due and owing would be a violation of the FDCPA.

Each of the other subparts, A, C and D, are moot. Each argues in some measure that the trial court based its decision on improper evidence or failed to consider certain arguments pertaining to the FDCPA. The trial court will revisit these issues upon remand in light of this opinion.

The appellants' first assignment is well taken in part.

The second assignment of error states:

"The trial court erred in granting plaintiff/appellee's motion for protective order and denying defendant/appellants' motion to compel plaintiff to make discovery, including refusing:

"A. To permit defendant/appellants to obtain the contract or other agreement evidencing the relationship between plaintiff/appellee (as a health care network provider) and (Blue Cross/Blue Shield);

"B. To permit defendant/appellants to obtain documents regarding plaintiff/appellee's collection agents' contractual relationship one to the other (as requested in defendant/appellants' request for production of documents No. 4 [first] ); and,

"C. To permit defendant/appellants to obtain plaintiff/appellee's medical records on defendant/appellant Shannon Oker (as requested in defendant/appellants' request for production of documents No. 4 [second] )."

The appellants argue that the trial court erred when it entered its order of June 2, 1995, which granted the appellee's motion for protective order and denied the appellants' motion to compel. The court found that the appellee did not have to disclose a copy of the contract between it and Jerome L. Holub & Associates, the January 14, 1994 letter from Gibson to Ms. Oker, or the complete medical file of Ms. Oker. The court also refused to compel the appellee to produce the contract between it and Blue Cross, International Special Audit System, Hudson, or Holub & Associates.

The appellants argue that they are entitled to the contract between appellee and Holub & Associates because the law firm was acting as a debt collector for purposes of the FDCPA. With respect to the letter from the attorney to Ms. Oker, the appellants argue that the letter was illegible as to who is the "creditor." As to the medical records, the appellants argue that Ms. Oker's attorney, as her representative, is entitled to her records. Finally, the appellants argue that the contracts between the appellee and International Special Audit System, Hudson, and Holub & Associates are essential to their claim under the FDCPA.

Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action. Civ.R. 26(B). A judge may issue protective orders as justice so requires to protect a party from annoyance, embarrassment, oppression, or undue burden or expense, including an order that discovery not be had. Civ.R. 26(C). Subject to Civ.R. 26, a party may request from any other party production of documents. Civ.R. 34.

The Supreme Court has held that R.C. 2317.02(A) provides the exclusive means by which privileged communications directly between an attorney and client can be waived. *State v. McDermott* (1995), 72 Ohio St.3d 570, 651 N.E.2d 985. Here, there is no evidence that the appellee has waived the privilege

between it and its attorney. The trial court correctly issued the protective order as to any contract between the appellee and its attorney.

Similarly, in *In re Miller* (1992), 63 Ohio St.3d 99, 109, 585 N.E.2d 396, 404–405, the Supreme Court held that R.C. 2317.02(B) governs the patient-physician privilege and any waiver of the privilege. The statute, which is in derogation of common law and must be strictly construed, is worded so that the privilege applies unless it is waived. Where the situation does not meet one of the instances of waiver expressly set forth in the statute, the privilege is not waived. *State v. Smorgala* (1990), 50 Ohio St.3d 222, 553 N.E.2d 672. The *Miller* court noted that the privilege had not been waived as the appellant had not filed any type of civil action to place his own physical condition at issue.

Since the patient herein, Ms. Oker, has neither filed an action which places her physical condition at issue nor executed a waiver or release of her patient-physician privilege, and no other exception applies, the trial court properly granted the appellee's motion for a protective order.

The appellants have also alleged that the letter between Gibson and Ms. Oker is discoverable because it is illegible. While the document is plainly typed, and therefore legible, it is true that it appears that the portion of the letter underneath the section which reads "RE: Mohan J. Durve, M.D., Inc." was not reproduced. The top of a few letters are visible, but not enough to permit the reader to discern the words, if any. The appellants ought not to be penalized for their inartful request, and since no privilege attaches, the information is discoverable.

Finally, as stated in the first assignment of error, the contract between Durve and Blue Cross is relevant to the appellants' counterclaim under the FDCPA and is discoverable. Likewise the appellants are entitled to any information regarding contracts between the appellee and International Special Audit System and Hudson.

The appellants' second assignment of error is well taken in part and denied in part.

The judgment is reversed and the cause is remanded.

*Judgment reversed*
*and cause remanded.*

MATIA and KARPINSKI, JJ., concur.