NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0295n.06

No. 13-3573

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

MID-CONTINENT INSURANCE CO., )
)
    Plaintiff-Appellee, )
)
v. ) ON APPEAL FROM THE UNITED
) STATES DISTRICT COURT FOR THE
) NORTHERN DISTRICT OF OHIO
JASON CODER, et al., )
)
    Defendants, )
)
CAROLINE SCARDINA, Administrator of the )
Estate of Kevin Beebe, )
)
    Defendant-Appellant. )

FILED

Apr 21, 2014
DEBORAH S. HUNT, Clerk

_____

BEFORE: BOGGS and ROGERS, Circuit Judges; STEEH, District Judge.[*]

BOGGS, Circuit Judge: Appellant, Caroline Scardina, administrator of decedent Kevin Beebe's estate, appeals the district court's grant of summary judgment in Mid-Continent Insurance Co.'s declaratory-judgment action. For the reasons set forth below, we reverse.

I

This declaratory-judgment action, filed in federal district court by Mid-Continent Insurance Co., has its roots in a state-court wrongful-death action. Caroline Scardina, the administrator of Kevin Beebe's estate and the appellant in the instant case, filed the underlying suit in the Court of Common Pleas of Cuyahoga County, Ohio against a negligent driver,

_____
[*] The Honorable George Caram Steeh III, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

Beebe's insurance company, and an Ohio tavern. Though not named as a defendant in the original complaint, Mid-Continent then filed a declaratory-judgment action in federal district court seeking a declaration that it had no duty to defend or indemnify the tavern and its owners.

On March 6, 2011, Kevin Beebe went to the Inn in West Andover, voluntarily became intoxicated and, following an argument with other patrons, was asked by an employee to leave. There remains some dispute as to whether Mr. Beebe was forced off the premises by staff or whether he left voluntarily, choosing not to wait for the ride he had called. Upon leaving the Inn, Beebe walked along a rural highway and, in the limited visibility caused by the rain and the dark, was struck and killed by an allegedly drunk driver whose purported intoxication was unrelated to the Inn.

On December 15, 2011, the administrator of Beebe's estate filed suit in the Cuyahoga County Court of Common Pleas against the driver, the driver's insurance company, the Inn, its owners, and the decedent's insurance company. The complaint alleged several claims for relief, among them a wrongful-death suit against the driver and claims for recovery against two of the decedent's auto-insurance companies based on the negligent driver's under-insurance. The final claim for relief, and the claim that is at issue in this case, was against the Inn in West Andover alleging that the Inn and its owners: possessed a liquor license, negligently forced Beebe to leave the premises, violated the Ohio Dram Shop statute, and should have known that Beebe would likely come to harm in that night's storm yet expelled him with from the Inn with reckless disregard for his safety.

In February 2012, two months after the original complaint was filed in the Court of Common Pleas, and while the state-court case was in its earliest stages of litigation (the court

2

was just about to set the date of its first case-management conference), Mid-Continent Insurance Co., the providers of the Inn's liability-insurance policy, filed a declaratory-judgment action in the United States District Court for the Northern District of Ohio, naming the Inn, its owners, and Caroline Scardina as defendants. Mid-Continent's complaint alleged that, although it had sold the Inn an insurance policy, and although the insurance policy included a duty to defend, the policy contained an exclusion disclaiming liability resulting from intoxication, the furnishing of alcohol, and violation of laws relating to the distribution of alcohol. Based on these allegations, Mid-Continent requested a declaratory judgment that it had no duty to defend or indemnify the Inn and its owners in the underlying action before the Court of Common Pleas.

No answers or responsive pleadings were filed by the named defendants within the time allotted, and Mid-Continent moved for, and was granted, a default judgment. Less than a week later, Caroline Scardina moved for, and was granted, leave to file an answer and counterclaim. In short order, responsive pleadings were filed by the remaining, hitherto-silent defendants. Mid-Continent, in its turn, responded to the defendants' counterclaims.

Mid-Continent and Scardina both moved for summary judgment. Mid-Continent claimed that it was entitled to a declaration that it had no duty to defend or indemnify because the underlying complaint did not state claims that fell within the scope of the insurance contract. This was, according to Mid-Continent, because Scardina's claim amounted to no more than a Dram Shop Act violation, a category of liability explicitly excluded by the plain language of the insurance policy. Scardina argued in response that the facts in the underlying complaint demonstrated liability independent of the Inn's service of alcohol and that the liquor exclusion is therefore inapplicable. Her argument was that because at least one of the stated causes of action

3

was covered by the policy and not subject to the liquor exclusion, the claim of common-law negligence, Mid-Continent is required to defend and indemnify the Inn. She further argued that, notwithstanding the inclusion of a reference to the Dram Shop Act in paragraph 18 of the complaint, the Dram Shop Act could never have served as the predicate for liability because Ohio does not recognize liability for injuries to patrons who are the direct and proximate cause of their own injuries.

In rebuttal, Mid-Continent argued that, absent an allegation of Beebe's intoxication, there is no "occurrence" (as required by the language of the policy) and that any occurrence of intoxication is subject to the liquor exclusion. Mid-Continent further argued that the only possible cause of action available against the Inn is one based on the Dram Shop Act, since no duty is otherwise owed an intoxicated person for self-inflicted injuries.

The court granted Mid-Continent's motion for summary judgment and denied Scardina's, finding that Mid-Continent owed no duty to defend or indemnify the insureds in state court. In so ruling, the court rejected Scardina's argument that, as the court put it, "the claim is one for negligence separate and distinct from liability arising under the Dram Shop Act." The court reasoned that, since there is a clear reference to the Dram Shop Act and since, "the complaint [cannot] fairly be read to assert two claims," the charge listed in the complaint fell squarely within the liquor exclusion in the insureds' policy. Scardina timely appealed.

## II

A district court's grant of summary judgment is reviewed de novo. *Blackmore v. Kalamazoo*, 390 F.3d 890, 894–95 (6th Cir. 2004). Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of any genuine issue of material fact, and all inferences are drawn in favor of the non-moving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). As the question of Mid-Continent's duty to defend concerns itself entirely with the interpretation of the provisions of an insurance contract and the construction of the parties' pleadings, it can be decided as a matter of law.

III

Mid-Continent brought suit in federal district court for a declaratory judgment that it had no duty to defend or indemnify its insureds in the wrongful death action in the Cuyahoga County Court of Common Pleas. The Commercial General Liability Coverage Form, part of the Inn's insurance contract, included the following term:

> [w]e will have the right and duty to defend the insureds against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages . . . . to which this insurance does not apply.

Under Ohio law, the scope of allegations contained within the complaint determine the extent of the insurer's duty to defend. *See Ohio Govt. Risk Mgt. Plan v. Harrison,* 874 N.E.2d 1155, 1160 (Ohio 2007). This absolute duty arises when "the allegations state a claim that potentially or arguably falls within the liability insurance coverage." *Ibid*.; *See Sharonville v. Am. Emp'rs Ins. Co.,* 846 N.E.2d 833, 837 (Ohio 2006) ("An insurer has an absolute duty to defend an action when the complaint contains an allegation in any one of its claims that could arguably be covered by the insurance policy, even in part and even if the allegations are groundless, false, or fraudulent."). Further, once an insurer's duty to defend arises with respect to one claim in a complaint, it is required to defend all of the other claims in the complaint, even

if the other claims are not covered by the policy. *Ibid.* In Ohio the precise contours of an insurance contract's provisions, and therefore the extent of the insurance company's duty to defend, are determined by the principles of contract analysis and are therefore a matter of law. *Id.* at 836.

Accordingly, this case boils down to a single inquiry: did the complaint in the Court of Common Pleas allege a cause of action that "potentially or arguably falls within the liability insurance coverage?" *Harrison*, 874 N.E.2d at 1160. If so, then Mid-Continent is not entitled to declaratory judgment.

A

Mid-Continent claims that it owes no duty to defend or indemnify and that it is therefore entitled to summary judgment for two reasons.

First, Mid-Continent points to the language of the commercial insurance policy sold to the Inn. The policy, as purchased, included a standard liquor-liability exclusion stating that the company would not be liable for "bodily injury or property damage" for which the insured is found liable by reason of (1) "causing or contributing to intoxication," (2) furnishing alcohol to anyone "under the legal drinking age or under the influence of alcohol," or (3) "any statute, ordinance or regulation relating to the sale" of alcohol.

Second, Mid-Continent points to the language of the underlying complaint in the Court of Common Pleas. The fifth count, the only count of the complaint relevant to the Inn, consisted of allegations that the defendants "possessed a liquor license," that the defendants "negligently forced Plaintiff's decedent to leave the bar," that the defendants were, "in violation of the Ohio Dram Shop statute," and that the defendants, "knew or should have known that they were placing

6

the Plaintiff's decedent in great probability of substantial danger of harm, yet recklessly disregarded the harm . . . ."

Without directly linking the language of the insurance policy to that of the complaint before the Court of Common Pleas, Mid-Continent seems to imply that, because the fifth count included allegations that the defendants owned a liquor license and that they violated the Dram Shop Act, the count necessarily claimed a Dram Shop Act violation to the exclusion of any other claims, thereby placing the count squarely within the ambit of the policy's liquor-liability exclusion.

In her brief, Scardina advances the same basic theory that she argued below and that the district court rejected. She argues that count five of her complaint alleges liability for common-law negligence on grounds independent of the three liquor-liability exclusions: causing the decedent's intoxication, furnishing alcohol to the intoxicated, or violating the Dram Shop Act.

The district court found against Scardina, agreeing with Mid-Continent that references in count five to the Dram Shop Act and the defendants' liquor license, "relate[] to claims asserted under the Dram Shop Act." The district court further reasoned that this was the sole theory of liability alleged in the fifth count because it could not "fairly be read to assert two claims." These findings were based on the court's observation that the elements tending to allege a Dram Shop Act violation appeared alongside those cited by Scardina as establishing an ordinary common-law negligence claim under a single heading entitled "fifth claim for relief." Further, the court found no sign that Scardina "intended to assert two claims . . . ." and stated that the Dram Shop Act violation and an ordinary negligence claim were mutually exclusive theories of liability so both could not be alleged in a single count.

Ultimately, the district court reasoned that because the underlying state-court complaint made out only one theory of liability based on the Dram Shop Act and because the unambiguous language of the liquor-liability exclusion disclaimed liability under the Dram Shop Act, Mid-Continent owed no duty to defend or indemnify the Inn or its owners.

B

Had the district court been correct that there is no fair reading of the complaint's fifth count that could make out two distinct causes of action, then summary judgment would have been appropriate. However, nothing requires so narrow a construction and, indeed, the law of Ohio civil procedure demands a much less formalistic one.

Ohio's procedural rules, similar to the Federal Rules of Civil Procedure, require that, "[a]ll pleadings shall be so construed as to do substantial justice." Ohio Civ. R. 8(F). *Compare* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."). Ohio's procedural rules were revised in 1970 following the adoption of an amendment to the Ohio Constitution granting rule-making powers to the Supreme Court of Ohio in place of Ohio's earlier code-based pleading system. Ohio Const. art. IV, § 5(B) (adopted effective 1968) ("The supreme court shall prescribe rules governing practice and procedure in all courts of the state . . . ."); *Compare* Ohio Rev. Code § 2309.40 (repealed 1970) ("allegations of a pleading shall be liberally construed, with a view to substantial justice between the parties"). The historical application of this section of the code was indeed liberal. "[T]he courts of Ohio have often declared in a variety of ways that pleadings must be construed liberally in favor of the pleader to promote and facilitate the statement of a cause of action . . . ." *Sessions v. Skelton*, 127 N.E.2d 378, 384 (Ohio 1955).

Despite a refashioning of the rules, the spirit of the Ohio procedural code lived on and the imperative of liberal construction is a frequent gloss in post-amendment cases. *See e.g. MacDonald v. Bernard*, 438 N.E.2d 410, 412 (Ohio 1982) ("[T]his court is mindful of the basic and general rule that pleadings shall be construed so as to do substantial justice and to that end, pleadings shall be construed liberally in order that the substantive merits of the action may be served.") This has led Ohio's courts to "look beyond the title given to the cause of action . . . and examine the language of the pleadings to determine if the plaintiff has stated any cognizable claim for relief." *Wolf v. Lakewood Hosp.*, 598 N.E.2d 160 (Ohio Ct. App. 1991). In short, Ohio is a notice-pleading state in which "no technical forms of pleading are required" and "a party is not required to plead the legal theory of recovery." *Mohan J. Durve, M.D., Inc. v. Oker*, 679 N.E.2d 19, 25 (Ohio Ct. App. 1996).

With that in mind, a fair reading of the fifth count of the complaint encompasses all the necessary elements of an ordinary common-law negligence cause of action, which in Ohio demands no more than a showing that the defendant owed a duty of care to the plaintiff, that the defendant breached that duty, and that the breach proximately caused the defendant's injury. *See Lang v. Holly Hill Motel, Inc.*, 909 N.E.2d 120, 122–23 (Ohio 2009). Here, Scardina claimed that Coder and Dolan owned the Inn, implying a heightened duty of care, that they breached that duty by "placing Plaintiff's decedent in great probability of substantial danger of harm," and that his ejection from the bar was the proximate cause of the decedent's death on the highway. These allegations are sufficient to make out a common-law negligence claim; Scardina should have survived summary judgment before the district court.

9

The district court was wrong to assert that, because the complaint's invocation of the Dram Shop Act and its alleged claim of common-law negligence are mutually exclusive, they cannot both be read in the complaint. It is well settled in Ohio law that litigants are permitted alternative or hypothetical pleading. Ohio's procedural rules permit "alternative or hypothetical pleading, or even the use of inconsistent claims." *Iacono v. Anderson Concrete Corp.*, 326 N.E.2d 267, 270 (Ohio 1975). These claims can be not only inconsistent, they can be pleaded in "one count or defense or in separate counts or defenses." Ohio Civ. R. 8(E)(2). Accordingly, the district court's statement that "the count is clearly labeled 'fifth claim for relief'" is of no relevance to the construction of the complaint. As the *Iacono* court points out, the proper remedy for a party in receipt of vague or ambiguous pleadings is to move for a definite statement under Ohio Civ. R. 12(E). *See Iacono*, 326 N.E.2d at 270.

## C

Given the legitimate reading of the complaint to allege liability under a theory of common-law negligence, the complaint before the Court of Common Pleas sets forth a claim that does not fall under the ambit of the liquor-liability exclusion. Since Ohio law establishes the allegations of the complaint as the determinant of whether insurance companies have a duty to defend, and the insurance contract's exclusion does not apply to Scardina's common-law negligence theory, Mid-Continent must defend the Inn and its owners in the action before the Court of Common Pleas.

## IV

For the reasons stated above, we REVERSE the decision of the district court granting summary judgment to the plaintiff and remand for further proceedings.

ROGERS, J., concurring in the result.

I concur, albeit with some hesitation resulting from what appears to be the underlying intent of the insurance policy to exclude coverage for such suits.

Ohio's Dram Shop Act not only provides a cause of action in limited circumstances against liquor permit holders, it also *precludes* any other cause of action against such a permit holder for death or injury that occurs as a result of actions of an intoxicated person to whom the permit holder had sold liquor. Ohio Rev. Code Ann. § 4399.18. The statute provides:

> [E]xcept as otherwise provided in this section, no person, and no executor or administrator of the person, who suffers personal injury, death, or property damage as a result of the actions of an intoxicated person has a cause of action against any liquor permit holder or an employee of a liquor permit holder who sold beer or intoxicating liquor to the intoxicated person unless the personal injury, death, or property damage occurred on the permit holder's premises or in a parking lot under the control of the permit holder and was proximately caused by the negligence of the permit holder or an employee of the permit holder.

Ohio Rev. Code Ann. § 4399.18. As alleged, Beebe's death resulted from his being forced off the Inn's premises in an intoxicated state. R. 1-3 at 4–5, PageID # 83–84 ("Despite its knowledge that Plaintiff's decedent was intoxicated and had no ride home, Defendant, The Inn in West Andover Ohio, through its agents and employees, negligently forced Plaintiff's decedent to leave the bar."). This might well state a common law cause of action for negligence were it not for the statutory preclusion of liability for death or injury that occurs as a result of an intoxicated person and off the liquor permit holder's premises, owed by a liquor permit older who sold beer or liquor to that intoxicated person. In light of that statutory preclusion, liability in this situation can only be obtained through the cause of action provided by the Dram Shop Act, and such claims are excluded by the insurance policy.

11

By its terms, however, the insurance policy does not fully exclude coverage for common law causes of action that are precluded by the Dram Shop Act. The policy states that "[Mid-Continent] will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply;" however, the policy's liquor liability exclusion, in relevant part, provides only that "[t]his insurance does not apply to . . . 'bodily injury' . . . for which any insured may be held liable by reason of . . . (1) [c]ausing or contributing to the intoxication of any person; (2) [t]he furnishing of alcoholic beverages to a person . . . under the influence of alcohol; or (3) [a]ny statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages" R. 1-1 at 13–14, PageID # 19–20. Therefore, it is possible for certain common law claims to fall within the liability insurance coverage yet still be precluded by the Dram Shop Act—as is the case here, where the alleged negligent act was ejecting an intoxicated person to whom the Inn had served liquor (and thus the claim is precluded by the Dram Shop Act), but because the alleged negligence was not causing a person's intoxication itself or furnishing alcohol to an intoxicated person, the claim is not covered by the policy's liquor liability exclusion. The insurer therefore must defend under the policy, even if all the insurer has to do is demonstrate that the preclusion applies. The insurance company can hardly have intended to allow its obligation to defend allegations arguably covered the insurance policy to result in an obligation to defend a Dram Shop Act claim explicitly excluded by the insurance policy. Although such a result appears anomalous, any anomaly can be fixed in the future by more precise drafting of the insurance policy.